TOWN OF FARMINGTON ET AL. *v.* VIACOM
BROADCASTING, INC.
(4535)

DUPONT, C. J., HULL and SPALLONE, JS.

Argued January 13—decision released March 17, 1987

---

*Thomas C. Clark,* for the appellant (defendant).

*David J. Elliott,* with whom, on the brief, was *Palmer S. McGee, Jr.,* for the appellee (plaintiffs Town of Farmington et al.).

HULL, J. The defendant appeals from the judgment of the trial court granting the plaintiffs' application for injunctive relief. The principal issues on appeal are (1) whether the trial court erred in concluding that the plaintiff Farmington planning, zoning and inland wetlands commission (hereinafter commission) had authority to require that the defendant dismantle its "standby" broadcast tower as a condition of granting the defendant's special exception for the construction of a new, taller broadcast tower, and (2) whether the commission was entitled to injunctive relief absent a showing of irreparable harm. The plaintiffs claims in their preliminary statement of issues that the defendant is estopped from raising these claims because it did not take an appeal from the original action of the commission.

The facts as found by the trial court are as follows. On June 14, 1976, the defendant's predecessor was granted a special exception by the commission to erect a 500 foot television broadcast tower on Rattlesnake Mountain in Farmington. The special exception was granted subject to certain conditions. The tower had to be erected within two years and the tower existing at the time had to be razed within that time. The tower was not built within two years, however. In June, 1978, the defendant again went to the commission and asked to increase the height of the tower to 1,129.3 feet. At a public hearing, required by the Farmington zoning

regulations, the defendant confirmed that upon completion of the higher tower, the existing standby tower would be removed. On July 10, 1978, the defendant's application for a special exception to heighten the tower was granted on condition that when the tower became operational, the standby tower would be dismantled. On July 12, 1978, the town asked the defendant for written assurance that the required condition would be met. In the summer of 1979, the defendant's chief engineer agreed that the condition regarding dismantling would be met. On September 20, 1979, the defendant, by letter, asked the commission to reconsider its decision regarding the dismantling. At a regular commission meeting on October 22, 1979, the defendant made a formal request that the order regarding dismantling be relaxed. The commission denied the request on October 29, 1979. The defendant never did anything about dismantling the standby tower.

On February 24, 1981, the defendant asked for clarification of the commission's position with respect to dismantling the tower. The defendant appeared before the commission on May 12, 1981, requesting permission to continue using the standby tower. The commission granted its request subject to the condition that there would be an annual review until such time as a separate tower, called the WRCH tower, was approved for construction on Rattlesnake Mountain. The defendant agreed on June 1, 1981, in writing, that it understood the conditions with respect to the standby tower.

No action was taken until July 16, 1984, when the commission met and received a status report from the defendant. Following this meeting, the town planner wrote to the defendant confirming the mutual understanding that the tower would be dismantled as soon as possible. On August 1, 1984, the defendant responded in writing that it understood the town planner's letter. It did not, however, begin the dismantling.

At a regular meeting of the commission on May 28, 1985, the defendant advised the commission that it was negotiating with United Cable Television concerning the standby tower, and that if United Cable secured the ownership of the standby tower, a new agency, the Connecticut Siting Council, would have authority over the disposition of the standby tower and the town could no longer exercise such authority. On June 24, 1985, the Farmington town counsel asked for assurances from the defendant's counsel that the tower would be dismantled. When no such assurances were given, the plaintiffs brought suit seeking an injunction to prohibit the defendant from selling or leasing the standby tower, and an injunction requiring that the defendant immediately dismantle the standby tower. The court granted the relief sought.

I

The defendant's first claim is that the court erred in concluding that the commission had the authority to impose the condition that the standby tower be removed upon construction of the taller tower. The defendant cites *Beckish* v. *Planning & Zoning Commission,* 162 Conn. 11, 14–15, 291 A.2d 208 (1971), in support of its claim. In *Beckish,* the plaintiff was granted a special exception on the condition, inter alia, that it take certain advertising signs down. The court found that there was nothing in the zoning regulations authorizing the defendant commission to require the discontinuance of the preexisting, nonconforming use before it would grant the exception. The defendant claims that, as in *Beckish,* the commission did not have the authority to require the discontinuance of the preexisting use as a condition of granting the special exception.

We do not find *Beckish* controlling in this instance. The commission had authority, both from the General

Statutes and from its own regulations, to impose the condition that is in issue here. First, General Statutes § 8-2 states that local zoning regulations "may provide that certain classes or kinds of . . . structures . . . are permitted only after obtaining a special permit or special exception . . . subject to standards set forth in the regulations and to *conditions* necessary to protect the public health, safety, convenience and property values." (Emphasis added.)

Second, article II, § 1 (3) of the Farmington zoning regulations allows construction of broadcast towers only when permitted by the commission after a public hearing. The regulations condition the commission's granting of any special exception upon the requirement that the proposed use not increase fire or traffic hazards, depreciate neighborhood property values, or cause other detriment to the neighborhood or its residents. The regulations do not restrict the commission's power to grant or deny special exceptions to narrow or specific grounds alone. Rather, the regulations give the commission authority to make decisions within broad, general limits related to a proposed structure's potential impact on the community.

The plaintiffs assert that implicit in the power to authorize special exceptions which do not have an adverse impact on public safety or neighborhood characteristics, is the authority to condition the grant of a special exception to avoid such an impact.

In *Lurie* v. *Planning & Zoning Commission,* 160 Conn. 295, 278 A.2d 799 (1971), the court held that a zoning commission had the authority reasonably to condition the grant of a special permit upon certain on and off-site changes and improvements by the applicant and by other town agencies not under the commission's control. In *Lurie,* the applicant sought to construct office buildings for conducting a particular business. The com-

mission "laid down in meticulous detail specific conditions" to the granting of the requested special exception. Id., 299. Several of the conditions related to on-site matters such as the placement of buildings and parking facilities. Other conditions, however, applied to off-site matters, including road improvements, the provision of traffic guards and the posting of a performance bond.

The *Lurie* plaintiffs argued that the special exception was invalid because the commission lacked power to impose off-site conditions. The court held that the commission "properly determined exactly what off-site . . . changes were desirable in the interests of public safety and then made their effectuation . . . a condition of the special permit." Id., 300. In so holding, the court noted that General Statutes § 8-2 permitted local zoning authorities "to impose certain standards and conditions on the use of property when the public interest required it." Id., 305, quoting *Summ* v. *Zoning Commission,* 150 Conn. 79, 86, 186 A.2d 160 (1962); see also *Carpenter* v. *Planning & Zoning Commission,* 176 Conn. 581, 594, 409 A.2d 1029 (1979) (General Statutes § 8-2 expressly provides that commissions are authorized to impose conditions as a prerequisite to certain uses of land).

*Beckish* v. *Planning & Zoning Commission,* supra, is not on point. Beckish involved an application to extend the nonconforming use of part of a floor in a building to include the whole floor. The town had specific zoning regulations related to such uses. These regulations permitted the zoning commission to allow expansion of "legally existing nonconforming retail establishments" to include the existing floor area of an existing main building only, subject to additional conditions. The commission sought to condition expansion of a nonconforming retail use upon the removal and nonreplacement of certain advertising signs outside of

the building in question. The court held that the advertising signs were never properly in issue before the commission because the record was devoid of any evidence of their location or zoning status and because "[t]he signs did not bear any relation" to the application for the proposed use of the building. Id., 17.

The present situation is not analogous. The defendant's maintenance of the existing standby tower plainly bears a substantial relationship to its request for a new tower. From the outset, the goal of the plaintiffs was "that Rattlesnake Mountain not be dotted with numerous towers" that would affect property values and the character of the surrounding neighborhoods. It is therefore within the scope of the zoning regulations for the commission to impose conditions related to aesthetics and property values on the granting of the special exception.

Where it appears that a local zoning authority has made an "honest judgment [that] has been reasonably and fairly exercised after a full hearing, courts should be cautious about disturbing the decision of the local authority." *Summ* v. *Zoning Commission,* supra, 89. We will not substitute our discretion for the actions of a local zoning agency. As the commission has the statutory authority to grant special exceptions only if certain requirements relating to safety and aesthetics are met, the commission could reasonably have granted a special exception for a new broadcast tower on the condition that the defendant remove the standby tower.

## II

The defendant's second claim is that the court erred in concluding that the plaintiffs were not required to show irreparable harm in order to be granted the mandatory injunction to remove the standby tower.

This court has repeatedly held that where a statute authorizes a municipality or public entity to seek an injunction in order to enforce compliance with a local zoning ordinance; see General Statutes § 8-12; the municipality is not required to show irreparable harm or unavailability of an adequate remedy at law before obtaining an injunction; rather, all that must be shown is a violation of the ordinance. *Greenwich* v. *Kristoff,* 2 Conn. App. 515, 521, 481 A.2d 77, cert. denied, 194 Conn. 807, 483 A.2d 275 (1984); *Johnson* v. *Murzyn,* 1 Conn. App. 176, 180, 469 A.2d 1227, cert. denied, 192 Conn. 802, 471 A.2d 244 (1984).

There is no question in the present case that the defendant continues to use the standby tower in violation of the commission's interpretation of Farmington zoning regulations permitting only those special exceptions which will not increase fire or traffic hazards, depreciate neighborhood property values, or "be otherwise detrimental to the neighborhoods or its residents." Because the defendant's failure to remove the standby tower violates Farmington zoning regulations, the commission was entitled to prevent the defendant's maintenance and use of the standby tower.

Because we have found that the court acted correctly in granting the injunction, we do not reach the question of whether the defendant was estopped from raising its claims.

There is no error.

In this opinion the other judges concurred.