[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The Town of Ashford petitions the court for injunctive relief, civil penalties, and attorney's fees under General Statutes § 8-12
for the alleged violation by the respondent, John Wolfe, of municipal zoning ordinances which prohibit the use of land as a junkyard without a special exceptions permit. On February 29, 2000, the court held a trial on this matter.
This action was commenced October 7, 1997, and, at that time, Ashford Zoning Regulations § 6.6 proscribed junkyards unless a special use permit was obtained. Currently, Ashford Zoning Regulations § 2.03.17c forbids the storage in the open of more than ten cubic yards of junk. "Junk" is defined as "[w]aste paper, rags, scrap metal, discarded material, garbage, scrap metal [sic], and refuse material including inert matter and landscape refuse," Ashford Zoning Regulations § 2.02. "Junkyard" is defined as "[a] lot, land or structure, or part thereof, where more than ten (10) cubic yards of waste paper, rags, scrap metal, discarded material are stored in the open, whether for sale or not; or a property where machinery, or vehicles not in running condition, or discarded solid material, including garbage, scrap metal, and refuse material including inert matter and landscape refuse are collected, dismantled, stored or salvaged," § 2.02.
Wolfe owns the property located at 27 Westford Road, Ashford. He characterizes himself as a "compulsive collector." His passion is to turn what others may regard as waste to useful purpose. He has retrieved and stored on two acres of his land items that others have discarded. He has amassed far more such material than he could ever utilize.
At one point he had thirteen unregistered motor vehicles in CT Page 3487 this area. When a motor vehicle was no longer operable as a vehicle, he would strip it of reusable parts and then employ the carcass for storage in this area.
Exhibit A consists of thirty-three color photographs taken in January 1999 of this two-acre section of sparse woodland. The scenes depicted in these photographs nearly defy verbal description. To summarize, these photographs show scores of plastic containers of every size and color; several makeshift sheds, covered by tarpaulins but otherwise exposed to the elements; the rusting hulks of refrigerators and other appliances; window frames; cracked panes of glass; decaying logs and lumber; several wooden and plastic crates; metal water tanks and pipes; a number of vehicles; scrap metal; a pyramid of bowling balls; and many other items. The court finds that this area constitutes a junkyard under former zoning regulation § 6.6 and the present definition under regulation § 2.02.
It is undisputed that the respondent has never applied for nor received a special exceptions permit to use this land as a junkyard.
In 1996, the then Ashford zoning enforcement officer, Rudy Makray, received a complaint regarding the state of the respondent's land. Makray, as a result of a site visit, on February 22, 1996, sent a warning notice to the respondent to curtail storage of inoperable vehicles on the property. On May 31, 1996, Makray issued an order to Wolfe to cease and desist from storing unregistered motor vehicles and a "vast amount" of waste material on his land. On July 3, 1997, Makray issued a second cease and desist order to Wolfe. On October 7, 1997, the petitioner instituted this suit.
On February 1, 1999, the court granted a temporary injunction which allowed the town to enter the property to remove the junk depicted in Exhibit A if Wolfe failed to redress the problem within thirty days. Upon his failure to comply, the town loaded a thirty cubic yard dumpster with material and removed the same from the property. Since that time, the respondent has removed many items, but around 200 to 300 cubic yards of junk still remain.
In response to the town's entry and removal of items, the respondent has erected on his property a large sign decrying these actions. CT Page 3488
General Statutes § 8-12 authorizes a municipality to seek injunctive relief to abate zoning violations. In order to secure such relief, a town need only prove that a violation is occurring, and there is no requirement to prove irreparable injury or inadequate legal recourse, Farmington v. ViacomBroadcasting, Inc., 10 Conn. App. 190, 197 (1987). Once the violation is shown, the court must balance the equities and consider, inter alia, the gravity and wilfulness of the transgression and the impact on the landowner, Johnson v. Murzyn,1 Conn. App. 176, 183 (1984). The court holds that the petitioner has established, by a preponderance of the evidence, that the respondent has stored a large quantity of junk, exceeding ten cubic yards, in the open on his property in contravention of Regulations § 203.17.C and its predecessor Regulations § 6.6.
Besides claiming that the material in question is not junk, the respondent also contends that he is exempted from the zoning regulations because the junkyard is a nonconforming use under General Statutes § 8-13a(b). That subsection provides: "When a use of land or building (1) is on a parcel that is fifteen or more acres, (2) is included in industry numbers 1795, 2951, 3272 or 4953 of the Standard Industrial Classification Manual, United States Office of Management and Budget, 1987 edition, (3) is not permitted by the zoning regulations of a municipality, (4) has been established and continued in reasonable reliance on the actions of the municipality, and (5) has been in existence for twenty years prior to July 8, 1997, without the institution of court action to enforce the regulations regarding the use, such use shall be deemed a legally existing nonconforming use and may be continued. Nothing in this subsection shall be construed to exempt such use from the requirements of the general statutes or of any other municipal ordinance."
Assuming, arguendo, that every other condition of § 8-13a is satisfied, the court concludes that the respondent has failed to establish that the fourth condition exists. That condition compels the respondent to demonstrate that his storage of junk in the open on his land "has been established and continued in reasonable reliance on the actions of the municipality." Here, all that has been shown is that the zoning enforcement officer took no action regarding the respondent's use until the town received a complaint. There was no evidence adduced that the town was aware of the use and its extent before that time. Previous inactivity may have been the result of ignorance or hopeful CT Page 3489 forbearance rather than acquiescence.
Under the circumstances of this case, no reasonable person would have relied on the town's inaction in order to maintain a two acre junkyard on their land.
The court has balanced the equities, including the length of time the respondent has had to rectify the situation and the number of warnings and orders which have been issued to him regarding this matter, and enjoins the respondent from storing junk, as defined by Regulations § 2.02, on his land in excess of ten cubic meters and orders him to remove the materials depicted in Exhibit A-1 through A-33, except for ten cubic yards, within one year of the date of this decision. Also, the court authorizes the town to enter the property to inspect every ninety days to monitor compliance. If the respondent has failed to satisfy this order within one year, he is ordered to avoid interfering with the removal of this material by the town at his expense. The wooden sheds are not to be regarded as junk to be removed.
The court further finds that the respondent's failure to comply with the zoning regulations was wilful, at least since the first cease and desist order was issued to him on May 31, 1996. As a result, the town has incurred legal expenses to prosecute this matter. Under § 8-12, the court orders the respondent to pay reasonable attorney's fees of $5,000. The fees were generated in order to secure the temporary and permanent injunctions and lengthy negotiation between the town and the respondent.
The court declines to order a civil penalty under § 8-12 because the respondent has removed a good deal of material already because he will incur significant costs to remove the remainder, and because the court has allowed the town to remove materials at his expense.
The petitioner has also asked that the court order the respondent to remove the signage critical of the town's conduct. The court denies this request in the absence of some interest which would override the respondent's rights to free speech under the state and federal constitutions and permit a prior restraint of these rights.
Sferrazza, J. CT Page 3490