DANIEL W. KOBYLUCK ET AL. *v.* PLANNING AND
ZONING COMMISSION OF THE TOWN OF
MONTVILLE ET AL.
(AC 24100)

Lavery, C. J., and McLachlan and Dupont, Js.

Argued February 9—officially released July 27, 2004

*John R. FitzGerald*, for the appellants (intervening defendants).

*Ronald F. Ochsner*, for the cross appellants (named defendant).

*Stanley Maxim Lucas*, for the appellees-cross-appellees (plaintiffs).

*Opinion*

McLACHLAN, J. The intervenors[1] appeal from the judgment of the trial court modifying the special permit issued to the plaintiffs, Daniel W. Kobyluck, Maureen A. Kobyluck and Kobyluck Sand & Gravel, Inc. (collec-

---

[1] On January 11, 2001, Joseph F. Matera, Lois M. Matera, Michael Matera, Thomas H. Turner, Katherine Turner, Steven Ravin, Laurie J. Ravin, Brian Joiner and Janet Joiner, all owners of property that neighbor the land at issue in this appeal, filed a motion to intervene, which the court granted. We refer to them collectively as the intervenors.

tively Kobyluck), by the defendant planning and zoning commission of the town of Montville (commission).[2] The intervenors claim that the court (1) improperly invalidated several conditions attached to the special permit[3] and (2) was required to remand the matter to the commission after invalidating those conditions. In addition, the commission cross appeals, claiming that the court improperly denied the motion to dismiss filed by the commission and its chairman. We affirm the judgment of the trial court as to the issues raised on the cross appeal and reverse the judgment with respect to the intervenors' appeal.

This zoning litigation involves a parcel of land owned by Kobyluck consisting of approximately sixty-five acres located in an R-120 zone on Oxoboxo Dam Road in Montville. Kobyluck conducts excavation and processing operations on the site; gravel excavations have been conducted since 1980. Excavations began in the east end of the parcel and proceeded west in phases designated one through five. These appeals involve phase five. In addition to material excavated on-site, off-site material is trucked in for on-site processing. There are two types of processing permitted under § 17.8 of the Montville zoning regulations, screening type processing and crushing type processing. Although the latter is allowed only in a commercial district, Kobyluck conducts both types of processing operations on its property.

Kobyluck claims that it has the right to conduct screening and crushing processing of on-site and off-

[2] The defendants are the commission, commission chairman Gregory Majewski, commission clerk Jan Regalski and Montville town clerk Lisa DiMarco.

[3] Specifically, the intervenors claim that the court improperly concluded that the commission lacked authority to impose the condition that Kobyluck could not bring in and process material mined off-site, that the attachment of conditions to the special permit was an attempt by the commission to enforce its regulations against Kobyluck and that the court improperly substituted its judgment for that of the commission.

site materials under a 1979 variance. The commission and the intervenors disagree, claiming that Kobyluck has no right to process off-site materials and that such activities are expressly prohibited by § 17.8.3A.7 of the Montville zoning regulations.[4] As Kobyluck believes that the processing activity is not limited to material excavated on-site, it has no plans to close down the site after the phase five excavation is completed.

On August 13, 1999, Kobyluck filed an application with the commission for a "[s]pecial permit renewal to excavate in excess of 500 [cubic yards] of material." That proposed excavation would create a pond by removing approximately 20,000 yards of material from phase five and would complete excavation operations at the site. The plaintiffs received approval for the proposed activity from the Montville inland wetlands commission on February 17, 2000. A public hearing on the application was held on March 14, 2000. Much of the testimony at that hearing concerned the effects of truck traffic caused by bringing in off-site material for processing, and the remaining life of the excavation and processing operation. At a meeting held on April 25, 2000, the commission approved, with conditions, a special permit to remove 20,000 cubic yards of earth material from phase five.

Unhappy with the imposition of ten conditions[5] on the commission's approval of the special permit, Kobyluck

[4] Section 17.8.3A.7 of the Montville zoning regulations provides: "Only material excavated and unearthed at a site in accordance with a valid excavation permit shall be permitted to be processed (screened) on said site."

[5] The conditions to the special permit, several of which mandated closure of the operations on phases one through four within 120 days and prohibited any off-site material from being processed at the site, were as follows:

"1. The applicant must comply with all provisions of Section 17.8 of the Zoning Regulations.

"2. The applicant must close Phases 1, 2, 3, and 4 of the site within 120 days of the issuance of this permit. Closure will be completed in compliance with Section 17.8 of the Zoning Regulations.

"3. Any material currently stockpiled on the site may be removed [from] the site. However, it may not be processed on the site. No material may be brought in from off this site to be processed on this site.

appealed. Kobyluck's first appeal was dismissed due to insufficient service of process. Kobyluck filed a second appeal under General Statutes § 8-8 (q)[6] on November 13, 2000, claiming that the conditions attached to the special permit approval were illegal, arbitrary and an abuse of the commission's discretion. The commission and its chairman filed a motion to dismiss, which the court denied. The matter was tried before the court on December 10, 2002. By memorandum of decision filed January 27, 2003, the court concluded that eight of the ten conditions to the special permit were invalid[7] and

"4. Any equipment and buildings, other than that equipment necessary to excavate & screen the 20,000 cubic yards of earth material & garage which houses automobiles, must be removed [from] the site within 120 days of the issuance of this permit. Any screening equipment remaining on the site must comply with Section 17.8 of the Zoning Regulations.

"5. Any disturbed areas beyond the limits of Phases 1 through 5 will be allowed to revegetate.

"6. The excavation of 20,000 cubic yards of earth material from the proposed pond will be completed within 3 years of the date of this Special Permit. However, the excavation approved for Phase 5 may not commence until Phase 1 through 4 have been closed and the provisions outlined in condition 4 have been complied with.

"7. The Applicant will file quarterly progress reports with the Commission, which must contain information regarding the status of the closure [of] Phases 1 through 4 and progress on the excavation on Phase 5.

"8. Failure to comply with any provisions of this Special Permit will result in permit revocation.

"9. This Special Permit is the only active permit for this site. Any other activities not approved in this permit, other than uses allowed by right in the R-120 Zone, are in violation of the Zoning Regulations, and these activities will cease in accordance with the stipulations of the Special Permit.

"10. The Applicant will post a bond, acceptable as to form by the Finance Director, in the amount of $160,000. This bond must be posted prior to issuance of a Zoning Permit."

[6] General Statutes § 8-8 (q) provides: "If any appeal has failed to be heard on its merits because of insufficient service or return of the legal process due to unavoidable accident or the default or neglect of the officer to whom it was committed, or the appeal has been otherwise avoided for any matter of form, the appellant shall be allowed an additional fifteen days from determination of that defect to properly take the appeal. The provisions of section 52-592 shall not apply to appeals taken under this section."

[7] The two found to be valid were conditions six and ten. See footnote 6.

modified the special permit accordingly. These appeals followed.

I

As a challenge to the court's jurisdiction is a threshold matter to our resolution of the claims on appeal, we address first the commission's cross appeal. The commission and its chairman filed a motion to dismiss this matter on two grounds. They claimed that the court lacked subject matter jurisdiction due to the fact that the chairman of the commission had not been properly served in the first appeal, thereby creating an incurable defect. They also claimed that the court lacked personal jurisdiction over them because the plaintiffs failed to append the sheriff's completed return of service to the writ of summons and complaint that was filed with the court clerk.

The commission claims that the court improperly denied the motion to dismiss. "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction." (Internal quotation marks omitted.) *Berlin Batting Cages, Inc.* v. *Planning & Zoning Commission,* 76 Conn. App. 199, 203, 821 A.2d 269 (2003). "A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Doe* v. *Roe,* 246 Conn. 652, 660, 717 A.2d 706 (1998). "Where a decision as to whether a court has subject matter jurisdiction is required, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *Stewart-Brownstein* v. *Casey,* 53 Conn. App. 84, 88, 728 A.2d 1130 (1999).

When considering a motion to dismiss, we are mindful that "Connecticut law repeatedly has expressed a policy preference to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his or her day in court. . . . Our practice does not favor the termination of proceedings without a determination of the merits of the controversy where that can be brought about with due regard to necessary rules of procedure. . . . For that reason, [a] trial court should make every effort to adjudicate the substantive controversy before it, and, where practicable, should decide a procedural issue so as not to preclude hearing the merits of an appeal." (Citations omitted; internal quotation marks omitted.) *Egri* v. *Foisie*, 83 Conn. App. 243, 249–50, 848 A.2d 1266 (2004). Our preference is to avoid a termination of proceedings due to mere technical imperfection.[8]

A

Kobyluck's original appeal from the commission's decision was dismissed by the court on November 1, 2000, due to insufficient service of process. On November 13, 2000, Kobyluck filed a second appeal, which was returned to the court without a sheriff's return of service. The commission and its chairman filed a motion to dismiss the second appeal, again on the ground of insufficient service of process. The court denied that

[8] "Centuries ago the common law courts of England . . . insisted upon rigid adherence to the prescribed forms of action, resulting in the defeat of many suits for technical faults rather than upon their merits. Some of that ancient jurisprudence migrated to this country . . . and has affected the development of procedural law in this state. . . . [H]owever, our legislature enacted numerous procedural reforms applicable to ordinary civil actions that are designed to ameliorate the consequences of many deviations from the prescribed norm, which result largely from the fallibility of the legal profession, in order generally to provide errant parties with an opportunity for cases to be resolved on their merits rather than dismissed for some technical flaw." (Internal quotation marks omitted.) *Coppola* v. *Coppola*, 243 Conn. 657, 664–65, 707 A.2d 281 (1998).

motion. The commission claims that that decision was improper.

In its memorandum of decision, the court, relying on *Augeri* v. *Planning & Zoning Commission,* Superior Court, judicial district of Middlesex, Docket No. 49786 (August 14, 1989), held that the failure to attach a sheriff's return of service is a procedural, rather than substantive, matter, and, thus, a circumstantial defect under General Statutes § 52-123.[9] That is an incorrect statement of Connecticut law as interpreted by our Supreme Court. Our Supreme Court has repeatedly held that § 52-123[10] "is used to provide relief from defects in the text of the writ itself but is not available to cure irregularities in the service or return of process. We have never held to the contrary." *Rogozinski* v. *American Food Service Equipment Corp.,* 211 Conn. 431, 434, 559 A.2d 1110 (1989); see also *Rocco* v. *Garrison,* 268 Conn. 541, 557, 842 A.2d 1124 (2004); *Hillman* v. *Greenwich,* 217 Conn. 520, 527, 587 A.2d 99 (1991); *Pack* v. *Burns,* 212 Conn. 381, 386, 562 A.2d 24 (1989); cf. *Boyles* v. *Preston,* 68 Conn. App. 596, 792 A.2d 878, cert. denied, 261 Conn. 901, 802 A.2d 853 (2002).

In the present case, § 52-123 is not the applicable curative provision. The applicable provision is General Statutes § 52-72.[11] The purpose of § 52-72 "is to provide

---

[9] In *Augeri* v. *Planning & Zoning Commission,* 24 Conn. App. 172, 586 A.2d 635, cert. denied, 218 Conn. 904, 588 A.2d 1381 (1991), we affirmed the decision of the trial court. In that appeal, however, we neither were presented with nor decided a claim concerning the defective return of service.

[10] General Statutes § 52-123 provides: "No writ, pleading, judgment or any kind of proceeding in court or course of justice shall be abated, suspended, set aside or reversed for any kind of circumstantial errors, mistakes or defects, if the person and the cause may be rightly understood and intended by the court."

[11] General Statutes § 52-72 provides: "(a) Any court shall allow a proper amendment to civil process which has been made returnable to the wrong return day or is for any other reason defective, upon payment of costs taxable upon sustaining a plea in abatement. .

"(b) Such amended process shall be served in the same manner as other civil process and shall have the same effect, from the date of the service, as if originally proper in form.

for amendment of otherwise incurable defects that go to the court's jurisdiction." *Hartford National Bank & Trust Co.* v. *Tucker*, 178 Conn. 472, 479, 423 A.2d 141 (1979), cert. denied, 445 U.S. 904, 100 S. Ct. 1079, 63 L. Ed. 2d 319 (1980). Section 52-72 requires the trial court to allow a proper amendment to defective process. See *Concept Associates, Ltd.* v. *Board of Tax Review*, 229 Conn. 618, 626, 642 A.2d 1186 (1994). In this case, it is undisputed that service was made properly and that Kobyluck timely returned the writ of summons. Due to an alleged clerical error, however, Kobyluck failed to attach the sheriff's return. That failure, the commission argues, constitutes defective process.

On January 22, 2001, Kobyluck filed a request for leave to file an amended appeal for the express purpose of including the sheriff's return. The court granted this request. Kobyluck's amended appeal thus has "the same effect, from the date of the service, as if originally proper in form." General Statutes § 52-72 (b). The court, therefore, properly denied the motion to dismiss due to Kobyluck's failure to append the sheriff's return of service.

B

Alternatively, the commission claims that the court improperly denied the motion to dismiss because Kobyluck's failure to serve the commission chairman in the first appeal constituted an incurable jurisdictional defect. That appeal was dismissed because neither in hand nor abode service was made on the commission chairman. Kobyluck subsequently filed a second appeal

"(c) If the court, on motion and after hearing, finds that the parties had notice of the pendency of the action and their rights have not been prejudiced or affected by reason of the defect, any attachment made by the original service and the rights under any lis pendens shall be preserved and continued from the date of service of the original process as though the original process had been in proper form. A certified copy of the finding shall be attached to and served with the amended process."

pursuant to § 8-8 (q). Insufficient service due to the default or neglect of the sheriff is a curable jurisdictional defect under § 8-8 (q).

The commission and its chairman filed a motion to dismiss, arguing that the defect in service in the initial appeal was due not to the sheriff's default or neglect, but rather to Kobyluck's failure to provide proper direction to the sheriff. The court disagreed. Noting that § 8-8 (e) does not require the plaintiff to provide the chairman's address in the citation, it concluded that the defect in service "occurred because the sheriff left the appeal papers with the Montville town clerk instead of serving the chairman of the commission in person. The plaintiff's failure to provide the correct home address for the chairman of the commission did not cause the incorrect service of the appeal. Therefore, § 8-8 (q) saves the appeal because the defect in service of the initial appeal was due to the sheriff's default or neglect."[12] Having reviewed the record, we conclude that the court's judgment was legally and logically correct. The court properly denied the motion to dismiss.

II

The intervenors claim that the court improperly invalidated several conditions that the commission attached to the special permit. We agree.

The parameters of the commission's review of a special permit application are well established. When considering an application for a special permit, the commission acts in an administrative capacity. *A.P. & W. Holding Corp.* v. *Planning & Zoning Board,* 167 Conn. 182, 184–85, 355 A.2d 91 (1974). The commission's sole function is "to determine whether the applicant's proposed use is expressly permitted under the

---

[12] We note that Public Acts 2004, No. 04-78, amended General Statutes § 8-8 (f). Those provisions do not apply to the intervenors' appeal.

regulations, and whether the standards set forth in the regulations and [General Statutes § 8-2] are satisfied." (Internal quotation marks omitted.) *Heithaus* v. *Planning & Zoning Commission*, 258 Conn. 205, 221 n.11, 779 A.2d 750 (2001). "In reviewing the action of the trial court, we have to decide whether it could in logic and in law reach the conclusion that the [commission] should be overruled." (Internal quotation marks omitted.) *Quality Sand & Gravel, Inc.* v. *Planning & Zoning Commission*, 55 Conn. App. 533, 537, 738 A.2d 1157 (1999).

General Statutes § 8-2 provides in relevant part that local zoning regulations "may provide that certain . . . uses of land are permitted only after obtaining a special permit or special exception . . . subject to standards set forth in the regulations and to conditions necessary to protect the public health, safety, convenience and property values. . . ."[13] Section 8-2 authorizes local zoning authorities "to impose certain standards and conditions on the use of property when the public interest" so requires. *Lurie* v. *Planning & Zoning Commission*, 160 Conn. 295, 305, 278 A.2d 799 (1971). It is "within the scope of the zoning regulations for the commission to impose conditions related to aesthetics and property values on the granting of the special [permit]." *Farmington* v. *Viacom Broadcasting, Inc.*, 10 Conn. App. 190, 196, 522 A.2d 318, cert. denied, 203 Conn. 808, 525 A.2d 523 (1987).

In *Lurie* v. *Planning & Zoning Commission*, supra, 160 Conn. 295, the court noted that "where an exception

---

[13] We note that the commission is empowered to deny a special permit due to general considerations such as public health, safety and welfare. See *Irwin* v. *Planning & Zoning Commission*, 244 Conn. 619, 627, 711 A.2d 675 (1998); *Cameo Park Homes, Inc.* v. *Planning & Zoning Commission*, 150 Conn. 672, 676–77, 192 A.2d 886 (1963); *A. Aiudi & Sons* v. *Planning & Zoning Commission*, 72 Conn. App. 502, 507, 806 A.2d 77 (2002), aff'd, 267 Conn. 192, 837 A.2d 748 (2003); *Whisper Wind Development Corp.* v. *Planning & Zoning Commission*, 32 Conn. App. 515, 521–22, 630 A.2d 108 (1993), aff'd, 229 Conn. 176, 640 A.2d 100 (1994).

or a special permit is granted and the grant is otherwise valid except that it is made reasonably conditional . . . its issuance will not be held invalid solely because of the existence of any such condition." Id., 307. Thus, conditions attached to a special permit are not per se invalid. Rather, their validity must be determined on a case-by-case basis. A key determinant in whether a condition to a special permit is valid is that condition's relationship to the action sought by the applicant. See *Gay* v. *Zoning Board of Appeals*, 59 Conn. App. 380, 386, 757 A.2d 61 (2000); see also 3 A. Rathkopf & D. Rathkopf, The Law of Zoning and Planning (4th Ed. 1994) § 61.49; 83 Am. Jur. 2d 748, Zoning and Planning § 906 (2003).

For example, in *Farmington* v. *Viacom Broadcasting, Inc.*, supra, 10 Conn. App. 190, the defendant sought a special exception[14] to construct a taller television broadcast tower. The plaintiff zoning commission granted the special exception, subject to the condition that the standby tower be removed on construction of the taller tower. Id., 193. Because we determined that the condition "bears a substantial relationship" to the application's request for a new tower, we upheld the commission's ruling. Id., 196.

Kobyluck's property is a sixty-five acre parcel. The conditions at issue in the present case pertain to the closure of the operations on phases one through four of the parcel and the termination of processing activities of off-site material on the property. Kobyluck argues that only the excavation, and not the processing, of gravel was properly before the commission. That claim is disingenuous. It is undisputed that Kobyluck intends to process the material excavated from phase five on-site. Although the conditions imposed on a special per-

[14] The terms "special permit" and "special exception" are interchangeable. *A.P. & W. Holding Corp.* v. *Planning & Zoning Board*, supra, 167 Conn. 185.

mit must be related to what is requested in the application; R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 5.4, p. 139; implicit in its request to "excavate in excess of 500 [cubic yards] of material" is Kobyluck's intention to process that material on-site.

We conclude that just as the commission in *Farmington* v. *Viacom Broadcasting, Inc.*, supra, 10 Conn. App. 190, reasonably could condition its issuance of a special permit to construct a new tower on the removal of the current tower, the commission here may condition the issuance of a special permit to excavate and to process gravel from phase five on the termination of current processing activities on the property. Indeed, § 17.8.3A.7 of the Montville zoning regulations explicitly provides that "[o]nly material excavated and unearthed at a site in accordance with a valid excavation permit shall be permitted to be processed (screened) on said site." The conditions simply were an attempt to ensure that the activities conducted on Kobyluck's property were in conformance with the Montville zoning regulations.[15]

Moreover, the commission is required by § 17.3 of the Montville zoning regulations to consider not only the location and size of the proposed use, but also "the nature and intensity of operations involved in connection therewith" when evaluating an application for a special permit.[16] It therefore was incumbent on the com-

[15] We note that Kobyluck claims that it has the right to conduct processing of on-site and off-site materials under a 1979 variance. The validity of that variance is not an issue presently before this court.

[16] Section 17.3 of the Montville zoning regulations, entitled "General Evaluation Criteria," provides: "In evaluating an application for a special permit the Commission shall determine that the proposed use shall be in harmony with the appropriate and orderly development of the neighborhood and will not hinder or discourage the development of adjacent property nor impair the value thereof. The location and size of the proposed use, the nature and intensity of operations involved in connection therewith, its site layout and its relation to access streets shall be such that both pedestrian and vehicular traffic to and from the use and the assembly of persons in connection

mission to consider the kaleidoscope of activities conducted on Kobyluck's property and the processing activity in particular. The majority of testimony at the March 14, 2000 public hearing on the special permit concerned the effects of truck traffic caused by bringing in off-site material for processing and the remaining life of the excavation and processing operation. Furthermore, under § 17.4 of the Montville zoning regulations, a special permit application must contain a site plan that satisfies § 18 of those regulations. Section 18.5 provides that "[i]n reviewing a site plan application, the Commission shall take into consideration the public health, safety and welfare of the public in general and the immediate neighborhood in particular, and may prescribe reasonable conditions and safeguards to insure compliance with following general objectives . . . ."[17]

Kobyluck's property is located in a residential zone. Approximately twenty-five trucks per one-half hour enter and exit Kobyluck's property. Irrespective of the 20,000 cubic yards of material that Kobyluck wants to excavate from phase five, there is presently another 80,000 cubic yards stockpiled in phases one through four. Kobyluck's attorney has indicated that Kobyluck

therewith will not be hazardous or inconvenient, or incongruous with, any residential district or conflict with the normal traffic of the neighborhood. In addition the nature and intensity of the operations involved in connection with the proposed use, and the site layout and development will not have a negative impact on environmental and natural resource areas or on adjacent to the site or within the immediate neighborhood."

[17] As we recently stated, "[b]efore [a] zoning commission can determine whether the specially permitted use is compatible with the uses permitted as of right in the particular zoning district, it is required to judge whether any concerns, such as parking or traffic congestion, would adversely impact the surrounding neighborhood. . . . Connecticut courts have *never* held that a zoning commission lacks the ability to exercise discretion to determine whether the general standards in the regulations have been met in the special permit process." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Bethlehem Christian Fellowship, Inc.* v. *Planning & Zoning Commission*, 73 Conn. App. 442, 457, 807 A.2d 1089, cert. denied, 262 Conn. 928, 814 A.2d 379 (2002).

intends to conduct processing operations on phases one, two and three after phases four and five are closed. As the court stated in its memorandum of decision, "[a]lthough cease and desist orders were issued on March 10, 1999, and October 9, 1999, processing activities continue at the site."

The testimony of commission members at the April 25, 2000 meeting to consider Kobyluck's application confirms that general considerations of the public health, safety and welfare of the public in general, and the immediate neighborhood in particular, prompted the conditions at issue in this appeal. As acting chairman Arthur Charland commented, "I think the motion . . . addresses our concerns, the concerns of the people of our town. Hopefully, it will resolve the problems we have had with the gravel bank—gravel operation." Commissioner William Tinnel then responded, "I just hope that the applicant understands that there are no mediating circumstances and that there is no language in here that allows anything other than what is in the permit—the special permit—I don't want them coming back in three years and telling me that something was in this that's not in this." The commission then approved the application with ten conditions attached.

It is apparent that the commission's decision to approve Kobyluck's application was reached only after it had assured itself that the processing of off-site material would be discontinued. The conditions to the special permit were an integral part of the commission's approval and were an attempt to ensure that the activities conducted on Kobyluck's property were in conformance with the Montville zoning regulations. For that reason, we conclude that the court improperly invalidated the eight conditions to the special permit.[18] Accordingly, we reverse the judgment of the trial court.

---

[18] It therefore is unnecessary to address the intervenors' second claim.

On the intervenors' appeal, the judgment is reversed and the case is remanded with direction to render judgment denying the plaintiffs' appeal. On the defendant planning and zoning commission's cross appeal, the judgment is affirmed.

In this opinion the other judges concurred.