CATHERINE GEVERS ET AL. *v.* PLANNING AND
ZONING COMMISSION OF THE TOWN OF
NORTH CANAAN ET AL.
(AC 26149)

Lavery, C. J., and McLachlan and Cretella, Js.*

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued October 12, 2005—officially released March 21, 2006

*R. Bartley Halloran,* for the appellants (plaintiffs).

*Judith Dixon,* for the appellee (named defendant).

*Peter C. Herbst,* for the appellees (defendants Yale Farm Golf Club Limited Partnership et al.).

LAVERY, C. J. The plaintiffs, Catherine Gevers, Wheaton Byers and Scott Asen,[1] appeal from the judgment of the trial court dismissing their appeal from the decision of the defendant planning and zoning commission of the town of North Canaan (commission) approving the special permit application of the defendant Yale Farm Golf Club Limited Partnership (Yale Farm).[2] The plaintiffs claim that the court (1) improperly concluded that substantial evidence supported the commission's finding that the proposed use would not unduly impair pedestrian safety, (2) abused its discretion in excluding additional evidence outside the record and (3) incorrectly found *Arway* v. *Bloom*, 29 Conn. App. 469, 615 A.2d 1075 (1992), appeal dismissed, 227 Conn. 799, 633 A.2d 281 (1993), to be controlling as to the import of their successful appeal of a related decision of the town's inland wetlands and watercourses agency. We affirm the judgment of the trial court.

This zoning litigation involves a parcel of land owned by Yale Farm consisting of 780 acres, 245 of which are located in a residential-agricultural zone in North Canaan. Straddling the border between North Canaan and Norfolk, the parcel's other 535 acres are located in Norfolk. In the spring of 2003, Yale Farm proposed to build a private eighteen hole golf course on the parcel. Under the proposal, the clubhouse, supporting buildings, structures and parking area would be in Norfolk, as would a majority of the eighteen golf holes.

Article VI of the North Canaan zoning bylaws provides that golf courses are permitted in residential-agricultural zones only by special permit. Accordingly,

---

[1] The plaintiffs are all owners of property in North Canaan that abuts the land at issue in this appeal.

[2] Yale Farm, LLC, the owner of the land at issue, also was named as a defendant. We refer in this opinion to both entities as Yale Farm.

on April 7, 2003, Yale Farm filed an application with the commission for such a permit. The commission held public hearings on May 28 and June 25, 2003, and participated in a site walk. At a special meeting on July 23, 2003, the commission reviewed the zoning bylaws and made the factual findings required thereunder. It then unanimously approved the special permit application, subject to four conditions.[3] The plaintiffs thereafter filed a complaint in the Superior Court, contesting the propriety of the commission's approval. They alleged that (1) the commission's finding that the proposed use is essential or desirable to the public convenience was not supported by substantial evidence, (2) the commission's finding that the proposed use will not create undue traffic congestion or unduly impair pedestrian safety was not supported by substantial evidence and (3) the commission improperly acted on the special permit application before receiving a final report of the inland wetlands agency. The court disagreed and dismissed the appeal. We granted the plaintiffs' petition for certification to appeal and now conclude that the court properly dismissed the plaintiffs' appeal.

I

The plaintiffs first claim that the court improperly concluded that substantial evidence supported the commission's finding that the proposed use would not unduly impair pedestrian safety. We disagree.

General Statutes § 8-2 (a) provides in relevant part that local zoning regulations "may provide that certain

---

[3] The conditions were: "(1) Size of membership shall be limited to 350. (2) Hours of construction will be limited to [7 a.m.-5 p.m.] Monday to Friday, [8 a.m.-1 p.m.] Saturday. No construction activity will occur Sunday, Christmas Day, New [Year's] Day, Memorial Day, July 4, Labor Day and Thanksgiving Day. (3) A performance bond will be required after the applicant has provided a cost estimate of the project as required in [a]rticle VIII, [§] F of the [z]oning [by]laws. (4) No event, golfing, or non-golfing, shall be allowed to have paying spectators on that portion of the land located in North Canaan."

. . . uses of land are permitted only after obtaining a special permit or special exception . . . subject to standards set forth in the regulations and to conditions necessary to protect the public health, safety, convenience and property values. . . ." The terms "special permit" and "special exception" are interchangeable. *Kobyluck* v. *Planning & Zoning Commission,* 84 Conn. App. 160, 171 n.14, 852 A.2d 826, cert. denied, 271 Conn. 923, 859 A.2d 579 (2004). "A special permit allows a property owner to use his property in a manner expressly permitted by the local zoning regulations. . . . The proposed use, however, must satisfy standards set forth in the zoning regulations themselves as well as the conditions necessary to protect the public health, safety, convenience and property values. . . . An application for a special permit seeks permission to vary the use of a particular piece of property from that for which it is zoned, without offending the uses permitted as of right in the particular zoning district. . . . When ruling upon an application for a special permit, a planning and zoning board acts in an administrative capacity. . . . [Its] function . . . [is] to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply." (Citations omitted; internal quotation marks omitted.) *Heithaus* v. *Planning & Zoning Commission,* 258 Conn. 205, 215–17, 779 A.2d 750 (2001).

The parameters of the review of a special permit application are well established. When considering an application for a special permit, the commission "acts in an administrative capacity and its function is to determine whether the applicant's proposed use is one that satisfies the standards set forth in existing regulations and statutes. . . . Review of zoning commission decisions by the Superior Court is limited to a determination

of whether the commission acted arbitrarily, illegally or unreasonably. . . . In appeals from administrative zoning decisions, the commission's conclusions will be invalidated only if they are not supported by substantial evidence in the record. . . . The substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. . . . The settled standard of review of questions of fact determined by a zoning authority is that a court may not substitute its judgment for that of the zoning authority as long as it reflects an honest judgment reasonably exercised." (Citations omitted; internal quotation marks omitted.) *Cybulski* v. *Planning & Zoning Commission*, 43 Conn. App. 105, 110–11, 682 A.2d 1073, cert. denied, 239 Conn. 949, 686 A.2d 123 (1996).

The plaintiffs shoulder the burden of demonstrating that the commission acted improperly. *Bloom* v. *Zoning Board of Appeals*, 233 Conn. 198, 206, 658 A.2d 559 (1995). "In applying the law to the facts of a particular case, the board is endowed with a liberal discretion . . . ." *Spero* v. *Zoning Board of Appeals*, 217 Conn. 435, 440, 586 A.2d 590 (1991). "The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the [commission]. . . . The question is not whether the trial court would have reached the same conclusion, but whether the record before the [commission] supports the decision reached." (Internal quotation marks omitted.) *Raczkowski* v. *Zoning Commission*, 53 Conn. App. 636, 642–43, 733 A.2d 862, cert. denied, 250 Conn. 921, 738 A.2d 658 (1999). In reviewing the conclusions of a zoning

authority, "[c]ourts must be scrupulous not to hamper the legitimate activities of civic administrative boards by indulging in a microscopic search for technical infirmities in their actions." (Internal quotation marks omitted.) *Samperi* v. *Inland Wetlands Agency*, 226 Conn. 579, 596, 628 A.2d 1286 (1993).

Article VIII, § D, of the North Canaan zoning bylaws requires, inter alia, the commission to find that the proposed use will not impair pedestrian safety before granting a special permit. The commission made such a finding at its July 23, 2003 meeting. The question before us is whether the court correctly concluded that substantial evidence in the record supports that finding.

Among the evidence presented to the commission prior to its approval of the special permit application was a traffic study dated April 28, 2003, which considered site environs, existing and background traffic, site generated traffic, and evaluation methodology and analyses. The study concluded that "the introduction of traffic generated by [the project] will not disrupt the continuity of traffic flow on the adjacent roadway system. Roadway conditions remain virtually unchanged with the addition of the site-generated traffic." The commission also heard the testimony of Robert J. Bass, a member of the national institute of transportation engineers with thirty years experience in traffic engineering. Bass testified at the May 28 and June 25, 2003 public hearings, during which he detailed his research, responded to questions and opined that the project "is going to have a very small impact on the roadway network." He also stated that he did not observe "any people walking or riding of bicycles" during his time studying the area. Bass further submitted to the commission a memorandum containing eight appendices regarding traffic at the site. Vincent McDermott, a planning consultant, also testified at the June 25, 2003 public hearing, stating that during the five hour period that

he observed the area, he saw "very few cars and no pedestrians other than a person crossing the road to pick up their mail . . . ." Although the plaintiffs allege that the issue of construction traffic was neither addressed in the record nor considered by the commission, the record reveals otherwise. In a letter submitted to the commission dated June 13, 2003, Stephen R. McDonnell of WMC Consulting Engineers specifically addressed the issue of construction traffic in his response to comments concerning traffic.[4]

At the public hearings, the plaintiffs presented no traffic studies or expert testimony regarding the issue

[4] The letter stated in relevant part: "Construction traffic will consist of numerous components. These components include delivery of granular type materials (i.e. road material, crush stone, sand, etc.), infrastructure materials (i.e., drainage pipe and structures, irrigation system, wooden bridge, etc.), equipment and machinery (i.e. bulldozers, backhoes, dump trucks, etc.) and construction workers.

"The delivery of granular material, infrastructure materials and equipment is expected to generate some 1300 trips (650 enter and 650 exit). It should be noted that these trips would occur sporadically over a 30-month construction period. Relative to the number of daily trips, the number of workers is expected to be around 10 to 30 per day. Assuming that all of the workers remain on site for lunch, somewhere between 20 and 60 trips per day would occur. These trips would occur primarily around 7:00 A.M. and 3:30 P.M.

"It should be noted that the majority of the heavy equipment will be delivered at the beginning of the project and remain on site for significant time periods with the removal of this equipment occurring towards the end of the construction project.

"The routing of the heavy or large trucks will be limited to Canaan Valley Road and Tobey Hill Road. All firms providing materials to the site will be required to consent to this arrangement prior to becoming a supplier to Yale Farm Golf Club. We have reviewed this route and have determined that this route will provide the most direct access to the site thereby reducing the time these large vehicles will be seen by the public. It should be noted that some of the construction workers might elect to use Route 272 and Spaulding Road to reach the site. We expect these vehicles to be either pickup trucks or passenger car type vehicles. In our review of the truck route we did observe numerous cross culverts and some cracking of the pavement in the area of these crossings. Prior to commencing construction, the applicant agrees to conduct a pre and post development survey with the Town of North Canaan to evaluate this route and is prepared to reconcile any damages to the truck route attributed to the construction of Yale Farm Golf Club."

of pedestrian safety. Moreover, they do not now refer to any evidence in the record that contradicts the aforementioned evidence submitted by Yale Farm. Unless presented with evidence that undermines either the credibility or the ultimate conclusions of an expert, the commission must credit expert testimony. *Kaufman* v. *Zoning Commission*, 232 Conn. 122, 156–57, 653 A.2d 798 (1995). Indeed, a review of the record indicates that the commission credited the testimony of the experts in the present case, as is solely its province. See *Whisper Wind Development Corp.* v. *Planning & Zoning Commission*, 32 Conn. App. 515, 523, 630 A.2d 108 (1993), aff'd, 229 Conn. 176, 640 A.2d 100 (1994). In light of the foregoing, we conclude that the court properly determined that substantial evidence supported the commission's finding that the project would not unduly impair pedestrian safety.

## II

The plaintiffs next contend that the court abused its discretion in excluding additional evidence outside the record. The following additional facts are relevant to the resolution of their claim. Eight months subsequent to the commission's approval of the special permit, the planning and zoning commission of the town of Norfolk (Norfolk commission) approved the special permit application of Yale Farm for the proposed golf course. That commission attached numerous detailed conditions to its approval, including one concerning the potential transportation of soil. Condition OO provides: "In connection with the construction authorized by these Special Use Permits, no soil or other earth products not originating on the Property or on the Applicant's/Permittee's adjoining property in the Town of North Canaan (as shown on the Revised Site Plan) shall be used (except for those specialized materials described in the Application). There shall be no export of soil or other earth products from the Property except

onto the Applicant/Permittee's adjoining property in the Town of North Canaan (as shown on the Revised Site Plan)."

Although desirous of adding this development to the record, the plaintiffs never filed a motion to supplement.[5] Rather, at trial, the plaintiffs' attorney requested to supplement the record with the decision of the Norfolk commission and the transcript of its related proceedings pursuant to General Statutes § 8-8 (k).[6] At that time, the attorney conceded that "this [issue] was not before the [commission]." In their appellate brief, the plaintiffs likewise acknowledge that "[t]his evidence was neither produced to nor considered by the commission." The plaintiffs' claim is problematic for two reasons.

First, the record before us is barren of any ruling by the court on the plaintiffs' request to supplement the record pursuant to § 8-8 (k). We have scrupulously reviewed the record and the July 13, 2004 transcript in search of such a determination to no avail. The July 13, 2004 transcript, in which the plaintiffs made their request, concludes with the court indicating that it would "take the papers" on the matter. The court subsequently issued a memorandum of decision dated October 5, 2004, which makes no reference to the plaintiffs'

---

[5] By contrast, Yale Farm filed with the court a motion to supplement the record with a correspondence between Bass and McDonnell, which was granted without opposition by the plaintiffs.

[6] General Statutes § 8-8 (k) provides: "The court shall review the proceedings of the board and shall allow any party to introduce evidence in addition to the contents of the record if (1) the record does not contain a complete transcript of the entire proceedings before the board, including all evidence presented to it, pursuant to section 8-7a, or (2) it appears to the court that additional testimony is necessary for the equitable disposition of the appeal. The court may take the evidence or may appoint a referee or committee to take such evidence as it directs and report the same to the court, with any findings of facts and conclusions of law. Any report of a referee, committee or mediator under subsection (f) of section 8-8a shall constitute a part of the proceedings on which the determination of the court shall be made."

request to supplement the record, § 8-8 (k) or the Norfolk commission.

It is axiomatic that the appellant must provide this court with an adequate record for review. See Practice Book § 61-10; see also *Crest Pontiac Cadillac, Inc.* v. *Hadley*, 239 Conn. 437, 444 n.10, 685 A.2d 670 (1996) (claims neither addressed nor decided by trial court not properly before reviewing court). When a trial court has not ruled on an issue before it, the appellant must file a motion for an articulation or rectification asking the court to rule on that matter. *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 53, 717 A.2d 77 (1998); see generally Practice Book § 66-5. The plaintiffs failed to do so in the present case. On the record before us, we cannot determine whether the court ruled on the plaintiffs' request to supplement the record.

Nevertheless, in their respective briefs, all parties presume a denial of that request. Even if we assume arguendo that the court in fact denied the request to supplement the record, the plaintiffs' claim nevertheless remains untenable. Section § 8-8 (k) permits a court, in an appeal from the decision of a planning and zoning commission, to "allow any party to introduce evidence in addition to the contents of the record if . . . it appears to the court that additional testimony is necessary for the equitable disposition of the appeal. . . ." In *Troiano* v. *Zoning Commission*, 155 Conn. 265, 268, 231 A.2d 536 (1967), our Supreme Court held that the trial court had the authority to decide, in the exercise of its discretion, whether additional evidence was necessary for the equitable disposition of the appeal. Accordingly, we need decide only whether the court abused its discretion in excluding additional evidence from the proceedings of the Norfolk commission. "When reviewing claims under an abuse of discretion standard, the unquestioned rule is that great weight is

due to the action of the trial court and every reasonable presumption should be given in favor of its correctness." (Internal quotation marks omitted.) *Rocque* v. *Light Sources, Inc.*, 275 Conn. 420, 442, 881 A.2d 230 (2005).

"[A]n appeal from an administrative tribunal should ordinarily be determined on the record made before that tribunal, and only when that record fails to present the hearing in sufficient scope to determine the merit of the appeal or when some extraordinary reason requires it should the court hear evidence." *Beach* v. *Planning & Zoning Commission*, 141 Conn. 79, 80, 103 A.2d 814 (1954). Thus, "allowance at trial of additional evidence under the concept of evidence 'necessary for the equitable disposition of the appeal' under [§] 8-8 (k), has generally received a restrictive interpretation to avoid review of the agency's decision based in part on evidence not presented to the agency initially." R. Fuller, 9A Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 32.8, p. 136.

The plaintiffs contend that the transportation of soil material will cause massive amounts of unsupervised construction traffic. A review of the proceedings of the Norfolk commission, however, indicates that the transportation of soil material from outside the property is no fait accompli. Kenneth Dye, Yale Farm's golf course architect, testified before the Norfolk commission on January 13, 2004. He stated: "I don't want . . . to give you a rosy scenario. I'm telling you the worst case scenario. And [that] is that approximately 30,000 cubic yards of topsoil may need to go from the Couch farm property to the wooded holes if in fact none of the topsoil on the wooded holes is available . . . . Bill Dest, our project agronomist, has informed me that he believes that many . . . if not most of the pasture areas on the property possess between eight and twelve inches of good topsoil. We only need four, so if the

pasture areas that we excavate topsoil on we're able to strip off eight [or] ten inches, we can therefore use that eight or ten inches to supply topsoil replacement on not only those same pasture holes, but also the adjacent wooded holes. That is our best case scenario. If our best case scenario comes true, we won't have to bring up any topsoil from the Couch farm property to the wooded holes on the property. We will simply get the topsoil for the wooded holes off of the pasture holes." Having reviewed the additional evidence submitted by the plaintiffs, the court reasonably could have concluded that the contention of the plaintiffs that they "would be subject to massive amounts of unsupervised congested construction traffic" is wholly speculative, and, as such, was not an extraordinary reason justifying admission under § 8-8 (k). As this court recently observed, "[s]peculation and conjecture have no place in appellate review." *Narumanchi* v. *DeStefano*, 89 Conn. App. 807, 815, 875 A.2d 71 (2005). Moreover, as discussed in part I, the court had before it additional evidence regarding traffic concerns, including expert testimony and traffic studies. In light of that evidence, the court simply may have concluded that it equitably could resolve the appeal without the additional evidence.

The plaintiffs rely on two decisions in support of their claim, *Troiano* v. *Zoning Commission*, supra, 155 Conn. 265, and *D'Addario* v. *Planning & Zoning Commission*, 25 Conn. App. 137, 593 A.2d 511 (1991). Both involved claims of a constitutional dimension; see *Troiano* v. *Zoning Commission*, supra, 269–70; *D'Addario* v. *Planning & Zoning Commission*, supra, 140 n.3; and hence are inapposite to the present case. A more similar case is *Nielson* v. *Zoning Commission*, 149 Conn. 410, 180 A.2d 754 (1962). Like the plaintiffs in the present case, the *Nielson* plaintiffs sought to offer evidence "which they claimed was not offered at the zoning hear-

ing but which had an essential bearing on the issue."
Id., 412. As in the present case, the evidence in *Nielson*
pertained to traffic concerns. Id., 413. Our Supreme
Court concluded in *Nielson* that the denial of the plain-
tiffs' motion did not constitute an abuse of the court's
discretion. Id.

The evidence from the proceedings of the Norfolk
commission was admissible under § 8-8 (k) only if it
was essential to the equitable disposition of the appeal,
a question that rests in the sound discretion of the court.
*Samperi* v. *Planning & Zoning Commission*, 40 Conn.
App. 840, 851, 674 A.2d 432 (1996). On the basis of the
record before us, we cannot conclude that the court
abused that discretion.

### III

The plaintiffs last assail the court's dismissal of their
appeal in light of their successful attack on a related
decision of the inland wetlands and watercourses
agency of the town of North Canaan (wetlands commis-
sion). Resolution of the plaintiffs' claim is governed
by our decision in *Arway* v. *Bloom*, supra, 29 Conn.
App. 469.

As in the present case, the plaintiffs in *Arway* filed
an appeal from the decision of the wetlands commission
in addition to their appeal from the decision of the
zoning commission. Id., 471. As here, "the wetlands
appeal and the zoning appeal were heard together in
the trial court, and the decisions were released on the
same day." Id., 472. The trial court in *Arway* sustained
the wetlands appeal and remanded the matter to the
wetlands commission for a new hearing. Id. Likewise,
in the present case, the court in its memorandum of
decision concluded that the delegation of the decision
as to the location of a mitigation area from the depart-
ment of environmental protection to the United States

Army Corps of Engineers was improper, thereby sustaining the wetlands appeal.

The plaintiffs thus argued that the decision as to the wetlands appeal rendered the report of the wetlands commission not final, in contravention of General Statutes § 8-3c (b). Section 8-3c (b) provides in relevant part that a zoning "commission shall not render a decision on the [special permit] application until the inland wetlands agency has submitted a report with its final decision to such [zoning] commission. In making its decision the zoning commission shall give due consideration to the report of the inland wetlands agency. . . ." The court rejected the plaintiffs' claim. It stated: "[A]lthough I am finding the delegation improper, it does not mean that the decision of the inland wetlands agency was not final. There was no further action to be taken by the inland wetlands agency. It was clearly a final decision which entitled the commission to proceed to act upon the special permit application. Although the appeal of the inland wetlands decision is being sustained, this does not disturb the commission's jurisdiction to render its own decision at the time it considered the matter. *Arway* v. *Bloom*, [supra, 29 Conn. App. 480]."

In *Arway*, we framed the issue before us as "whether the trial court improperly found that [§ 8-3c (b) requires] the decision of a zoning commission to be set aside when a decision of the wetlands commission affecting the same property is appealed and judicially determined to have been illegal." Id., 472. That issue was one of first impression which required us "to determine what the legislature meant by its use of the terms final decision and due consideration." Id., 473. In interpreting § 8-3c (b), we found "nothing to indicate that the term final decision means something other than the final decision contained in the report the zoning commission received from the wetlands commission, which report

the zoning commission had in hand at the time it rendered its decision." Id., 473–74. We found further that "[t]here is nothing to indicate that the validity of the planning commission's decision was intended to be contingent upon the ultimate validity of the wetlands decision." Id., 478.

As in the present case, the zoning commission in *Arway* "acted on the applicants' site plan and special permit application with a favorable final report from the wetlands commission in hand." Id., 480. The fact that the wetlands decision was later reversed on appeal, we reasoned, "did nothing to disturb the zoning commission's jurisdiction to render its own decision at the time it considered the wetlands report." Id. We therefore concluded that, having given due consideration to the final decision of the wetlands commission contained in its report, the zoning commission satisfied the requirements of § 8-3c (b).[7] Id. We held further that the "zoning commission's jurisdiction to render this decision was unaffected by the [plaintiffs'] subsequent successful attack on the wetlands decision." Id., 480–81.

The plaintiffs attempt to distinguish the present case from *Arway* in that the wetlands decision here was reversed on substantive, rather than procedural, grounds. That effort is unavailing. Although *Arway* involved a procedural defect, we made no distinction in that opinion between procedural and substantive defects. Rather, our focus was on what constitutes a final decision of the wetlands commission. When a zoning commission gives due consideration to a final decision of the wetlands commission in reaching its determination on a special permit application, and the wetlands decision is subsequently invalidated on appeal, that subsequent development is of no conse-

---

[7] The transcript of the July 23, 2003 special meeting indicates that the commission reviewed the decision of the wetlands commission.

494

quence to the decision of the zoning commission. Id. As we explained: "Any other approach would deprive the zoning commission of the authority to render its own final decision until all appeals of the wetlands commission's decision have been exhausted. A reversal or invalidation of the wetlands commission's decision would then require the applicant to reapply for both zoning and wetlands approval, and run the risk and concomitant expense of invalidation all over again. We do not believe the legislature intended to create such a costly and potentially endless application process." Id., 481. We therefore conclude that the court properly dismissed the plaintiffs' appeal despite their successful attack on the related wetlands decision.

The judgment is affirmed.

In this opinion the other judges concurred.