## JOHN SOBCZAK ET AL. *v.* BOARD OF EDUCATION OF THE CITY OF MERIDEN ET AL.
### (AC 24861)

Foti, DiPentima and Cretella, Js.

Argued December 7, 2004—officially released March 15, 2005

W. *Martyn Philpot, Jr.*, for the appellant (named plaintiff).

*David S. Monastersky*, with whom, on the brief, was *Alexandria L. Voccio*, for the appellees (defendants).

*Opinion*

DiPENTIMA, J. The plaintiff John Sobczak[1] appeals from the judgment of the trial court, following a jury trial, in favor of the defendants, the board of education of the city of Meriden (board) and Elizabeth Ruocco.[2] Although the plaintiff raises multiple claims of instructional and evidentiary error, the dispositive issue in this appeal is whether the plaintiff failed to exhaust the grievance procedure set forth in the collective bargaining agreement (agreement) between the board and the Meriden federation of municipal employees. We conclude that he did, thereby depriving the court of subject matter jurisdiction. We therefore reverse the

[1] Juan DeJesus originally was a plaintiff in this action. Prior to trial, the trial court granted the motion filed by the defendants, the board of education of the city of Meriden and Elizabeth Ruocco, for a judgment of nonsuit for failure to appear, and rendered judgment in favor of the defendants as to DeJesus only. We therefore refer in this opinion to Sobczak as the plaintiff.

[2] At all relevant times, Ruocco was superintendent of the Meriden school system.

judgment of the trial court and remand the case with direction to render judgment dismissing the action.

The jury reasonably could have found the following facts. For twenty-seven years, the plaintiff was employed as a custodian by the board. In December, 1997, he grew increasingly concerned about the allegedly inequitable use of overtime by his supervisor, Ed Boganski. While cleaning the office of a secretary to the principal of Washington Middle School, the plaintiff discovered custodian payroll records in a file cabinet. He then made copies of those documents. On December 17, 1997, the plaintiff and three other custodians filed a grievance with their union and the school principal, accusing Boganski of "[h]arassment," "[a]buse of power," "[d]eceiving and misleading overtime record keeping," and "[t]otal disregard for [their] contract . . . ." The plaintiff also informed union president Ricky Allen that he had obtained copies of the payroll records. Two days later, John Cordani, head of the buildings and ground department for the city of Meriden, met with the plaintiff. After Cordani cautioned the plaintiff that his activities in obtaining the records potentially were criminal, the plaintiff signed a resignation letter. At that time, he was fifty-nine years old.

Thereafter, this action commenced.[3] The plaintiff filed a six count complaint that included a count alleging age discrimination pursuant to both the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., and the Connecticut Fair Employment Practices Act, General Statutes § 46a-51 et seq. The defendants filed a motion to strike that count on the ground that the plaintiff had failed to exhaust his administrative remedies by not filing a complaint with the commission on human rights and opportunities. On October 6, 2000, the court granted

---

[3] It is undisputed that the plaintiff failed to initiate a grievance under the grievance procedure set forth in the agreement.

the motion. The plaintiff then filed a four count amended complaint alleging constructive termination, breach of the implied covenant of good faith and fair dealing, wrongful termination and negligent infliction of emotional distress. In response, the defendants filed an answer and four special defenses.[4] The matter was tried to the jury. Following the close of the plaintiff's case, the defendants moved for a directed verdict, contending that, as the plaintiff had not exhausted his administrative remedies, the court lacked subject matter jurisdiction. The court reserved its decision on that motion. The jury returned a verdict in favor of the defendants on all counts, and this appeal followed.[5]

I

The defendants claim that, because the plaintiff failed to exhaust his administrative remedies, the court lacked subject matter jurisdiction.[6] "A determination regarding a trial court's subject matter jurisdiction is a question

---

[4] The special defenses were as follows: "(1) As to all counts, for the matters alleged in the complaint, the [plaintiff] did not avail [himself] of the grievance procedure and [has] therefore not exhausted [his] administrative remedies. This being the case, the Court lacks subject matter jurisdiction.

"(2) As to all counts, for the matters alleged in the complaint, the [plaintiff has] not pursued a complaint before the [commission on human rights and opportunities]; therefore, the Court has no subject matter jurisdiction for any complaint based on age.

"(3) As to all counts, the plaintiff has failed to mitigate his damages.

"(4) As to the allegation of Count Four, this claim against the Meriden Board of Education is barred by the doctrine of governmental immunity."

[5] At oral argument, the plaintiff stated that his appeal pertained to the implied covenant of good faith and fair dealing and negligent infliction of emotional distress counts only.

[6] In his reply brief, the plaintiff claims that by not filing a timely motion to strike, the defendants abandoned any challenge predicated on his failure to exhaust administrative remedies. That is incorrect. A claim that the court lacks subject matter jurisdiction cannot be waived and can be raised at any stage in the proceedings. See *Dowling* v. *Slotnik*, 244 Conn. 781, 787, 712 A.2d 396, cert. denied sub nom. *Slotnik* v. *Considine*, 525 U.S. 1017, 119 S. Ct. 542, 142 L. Ed. 2d 451 (1998). Moreover, the defendants' first special defense raised that issue.

of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Kobyluck* v. *Planning & Zoning Commission*, 84 Conn. App. 160, 165, 852 A.2d 826, cert. denied, 271 Conn. 923, 859 A.2d 579 (2004).

"It is well settled under both federal and state law that, before resort to the courts is allowed, an employee must at least attempt to exhaust exclusive grievance and arbitration procedures, such as those contained in the collective bargaining agreement between the defendant and the plaintiffs' union." *Daley* v. *Hartford*, 215 Conn. 14, 23, 574 A.2d 194, cert. denied, 498 U.S. 982, 111 S. Ct. 513, 112 L. Ed. 2d 525 (1990). Failure to exhaust the grievance procedures deprives the court of subject matter jurisdiction. Id., 22–23; see also *Neiman* v. *Yale University*, 270 Conn. 244, 253, 851 A.2d 1165 (2004). "The purpose of the exhaustion requirement is to encourage the use of grievance procedures, rather than the courts, for settling disputes. A contrary rule which would permit an individual employee to completely sidestep available grievance procedures in favor of a lawsuit has little to commend it. . . . [I]t would deprive employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances. If a grievance procedure cannot be made exclusive, it loses much of its desirability as a method of settlement. A rule creating such a situation would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements." (Internal quotation marks omitted.) *Labbe* v. *Pension Commission*, 229 Conn. 801, 811–12, 643 A.2d 1268 (1994).

Notwithstanding the important public policy considerations underlying the exhaustion requirement, our Supreme Court has "grudgingly carved several exceptions" from the exhaustion doctrine; *Harwinton Dril-*

*ling & Engineering Co.* v. *Public Utilities Control Authority*, 188 Conn. 90, 94, 448 A.2d 210 (1982); although "only infrequently and only for narrowly defined purposes." *LaCroix* v. *Board of Education*, 199 Conn. 70, 79, 505 A.2d 1233 (1986); see also *Polymer Resources, Ltd.* v. *Keeney*, 227 Conn. 545, 561, 630 A.2d 1304 (1993). One of the limited exceptions to the exhaustion rule arises when recourse to the administrative remedy would be demonstrably futile. *O & G Industries, Inc.* v. *Planning & Zoning Commission*, 232 Conn. 419, 429, 655 A.2d 1121 (1995); *Labbe* v. *Pension Commission*, supra, 229 Conn. 814.

The plaintiff contends that the futility exception applies, thus excusing his failure to exhaust the remedies available to him under the agreement. We disagree.

"Unions and their employers have broad contractual authority to provide administrative remedies for disputes arising out of the employment relationship. That authority encompasses issues of law as well as of fact. . . . Before pursuing even alleged violations of state statutory procedures and of constitutional rights to due process and equal protection, parties to a collective bargaining agreement must attempt to exhaust the exclusive grievance and arbitration procedures established in their agreement before resorting to court." (Citations omitted; internal quotation marks omitted.) *Trigila* v. *Hartford*, 217 Conn. 490, 494–95, 586 A.2d 605 (1991).

Article III of the agreement sets forth a grievance procedure designed to "equitably resolve any alleged breaches of this Agreement or problems incident to job descriptions, classifications, duties, and working conditions . . . ." The grievance procedure contains both an informal procedure and a five step formal procedure.[7]

---

[7] The agreement provides in relevant part: "3.4 Informal Procedure: (a) If an employee feels that he/she may have a grievance, he/she shall first discuss the matter with his/her immediate supervisor in an effort to resolve the problem informally.

"3.5 Formal Procedure: (a) <u>Level One—Immediate Supervisor</u>

"(i) If the Grievant is unable to resolve the grievance at the informal level, he/she may, after the informal meeting with the immediate supervisor, file a written grievance with the immediate supervisor setting forth the specifics that the individual believes are grievable and the proposed remedy being sought.

"(ii) Within five (5) days after the receipt of this formal grievance, the immediate supervisor will hold a meeting with the grievant.

"(iii) The immediate supervisor shall, within eight (8) days after the meeting, render a decision with the reasons therefor in writing to the grievant.

"(b) <u>Level Two—Director of Personnel</u>

"(i) If the grievant is not satisfied with the disposition of the grievance at Level One, he/she may, within ten (10) days after the decision or fourteen (14) days after the Level One meeting, file the grievance with the Director of Personnel.

"(ii) The Director of Personnel shall, within five (5) days after receipt of the grievance, meet with the grievant.

"(iii) The Director of Personnel shall, within eight (8) days after the meeting, render a decision with the reasons therefor in writing to the grievant.

"(c) <u>Level Three—Superintendent of Schools</u>

"(i) If the grievant is not satisfied with the disposition of the grievance at Level Two, he/she may, within ten (10) days after the decision or fourteen (14) days after the Level Two meeting, file the grievance with the Superintendent.

"(ii) The Superintendent or his/her designee shall, within five (5) days after receipt of the grievance, meet with the grievant.

"(iii) The Superintendent or his/her designee shall, within nine (9) days after the meeting, render a decision and the reasons therefor in writing to the grievant.

"(d) <u>Level Four—Board of Education</u>

"(i) If the grievant is not satisfied with the disposition of the grievance at Level Three, he/she may, within ten (10) days after the decision, or fourteen (14) days after the meeting with the Superintendent or Designee, file the grievance with the Federation for further processing. Within twenty (20) days of receipt of the grievance, the Federation may submit the grievance to the Board of Education by forwarding a copy to the Board President and a copy to the Superintendent of Schools. Should the Federation decide not to process the grievance to the Board level, the grievance shall be deemed to be waived.

"(ii) The Board of Education or a committee thereof shall, within ten (10) days after receipt of the grievance, meet with the grievant for the purpose of resolving the grievance.

"(iii) The Board of Education or a committee thereof shall, within five (5) days after such meeting, render its decision and the reasons therefor in writing to the grievant.

"(e) <u>Level Five—Arbitration</u>

(i) Only those grievances which violate the specific terms of this Agreement shall be arbitrable. If the Federation is not satisfied with the disposition of a grievance at Level Four that is arbitrable, the Federation may, within fourteen (14) days after the decision or within twenty-one (21) days after the meeting with the Board of Education or Committee of the Board, submit the grievance to arbitration. Should the Federation decide not to proceed to arbitration, the grievance shall be deemed to be dropped.

Level one allows[8] the grievant to file a written grievance with the immediate supervisor, and requires the supervisor to meet with the grievant and to furnish a written decision to the grievant. If the grievant is unsatisfied with that disposition, level two permits the grievant to file the grievance with the director of personnel, who likewise must meet with the grievant and supply the grievant a written decision. Further recourse is provided at level three, at which a grievant is entitled to file the grievance with the school superintendent. At that point, either the superintendent or a designee must

"If the parties cannot mutually agree upon a single arbitrator, the Federation shall submit the grievance to arbitration by filing a demand for arbitration under the Voluntary Labor Arbitration Rules of the American Arbitration Association. The American Arbitration Association shall then act as the administrator of the proceedings.

"(ii) The arbitrator selected shall confer promptly with the representatives of the Board and the grievant, shall review the record of the prior hearings, and shall hold such further hearings as he/she shall deem requisite.

"(iii) The arbitrator shall be bound by the Voluntary Labor Arbitration Rules. He/she shall hear only one grievance at a time. He/she shall have no power to add to, delete from, or modify any provisions of the agreement. The decision of the arbitrator shall be final and binding upon the parties.

"(iv) The costs of the services of the arbitrator shall be born[e] equally by the Board of Education and the Federation.

"(f) Right of Employees to Representation

"(i) No reprisals of any kind shall be taken by either party or by any member of the Administration against any participant in the grievance procedure by reason of such participation.

"(ii) The grievant may only be represented at Levels Four and Five of the grievance procedure by a Federation Representative. A grievant may be represented by any representative at Levels One, Two and Three of the grievance procedure, provided, however, that exclusive organizational representation shall be provided by the Federation. When a grievant is not represented by the Federation, the Federation shall have the right to be present and state its views at Levels One, Two and Three of the grievance procedure.

"(g) Miscellaneous

"(i) Employees shall utilize this grievance procedure before seeking other legal or administrative remedies to resolve their grievances.

"(ii) All documents, communications and records generated by a grievance shall be filed separately from the personnel files of the participants."

[8] We acknowledge that the agreement explicitly provides that the grievant "may" file grievances at levels one through three. In *Neiman* v. *Yale University,* supra, 270 Conn. 257, the plaintiff claimed that such language rendered the filing of a grievance permissive rather than mandatory. The court rejected that claim, holding that although the plaintiff was not compelled to pursue administrative remedies, the language meant that the plaintiff had the choice of either forgoing the grievance procedure and accepting the decision or using the procedure available. Id., 257–58.

meet with the grievant and provide a written decision to the grievant.

In his reply brief, the plaintiff argues that he asked Allen, the union president, to file a grievance on his behalf. Because Allen refused to do so, the plaintiff concludes, the grievance procedure was futile and inadequate. We do not agree. Even if we presume that Allen refused to file the grievance, the plaintiff remained free to pursue his grievance. The grievance procedure provides that "[a] grievant may be represented by *any representative* at Levels One, Two and Three of the grievance procedure, provided, however, that exclusive organizational representation shall be provided by the Federation. When a grievant is not represented by the Federation, the Federation shall have the right to be present and state its views at Levels One, Two and Three of the grievance procedure." (Emphasis added.) The plaintiff, therefore, was expressly permitted to initiate a grievance either on his own or with the assistance of a representative other than the union at levels one through three of the grievance procedure. It is undisputed that he failed to do so.

Furthermore, the plaintiff's contention that it necessarily would be unavailing to file a grievance pursuant to levels one through three is purely speculative. "The mere possibility, or even likelihood, of an adverse decision does not render a remedy futile." *Neiman* v. *Yale University*, supra, 270 Conn. 260. "It is futile to seek a remedy only when such action could not result in a favorable decision and invariably would result in further judicial proceedings." *O & G Industries, Inc.* v. *Planning & Zoning Commission*, supra, 232 Conn. 429. On the basis of the undisputed facts in the record, we can only speculate as to whether the filing of a grievance with the superintendent, for example, would have resulted in a decision unfavorable to the plaintiff. We

certainly cannot say that he could not obtain a favorable decision.

In *Housing Authority* v. *Papandrea*, 222 Conn. 414, 432, 610 A.2d 637 (1992), our Supreme Court rejected the claim of futility by the plaintiff because the grievance procedures were capable of providing the plaintiff with relief even though the commissioner of the department of housing had, in an advisory letter, already taken a position that was adverse to the plaintiff. The *Papandrea* court stated that "[t]he fact that the commissioner [had taken the adverse position in a letter] did not relieve the [plaintiff] of its obligation to pursue its administrative remedies in an effort to persuade the commissioner that his position was legally incorrect." Id. Likewise, the plaintiff in the present case has failed to demonstrate that resort to the grievance procedure would necessarily have been futile or inadequate.

The agreement mandated that "[e]mployees *shall* utilize this grievance procedure before seeking other legal or administrative remedies to resolve their grievances." (Emphasis added.) By not complying with that requirement, the plaintiff failed to exhaust the available grievance procedure. That failure deprived the court of subject matter jurisdiction.

## II

The plaintiff nevertheless argues that a claim sounding in negligent infliction of emotional distress[9] is exempt from the exhaustion requirement. Relying on *Mendillo* v. *Board of Education*, 246 Conn. 456, 717 A.2d 1177 (1998), he asserts that "[w]here there is an underlying claim of constructive discharge, notwithstanding the existence of a collective bargaining griev-

[9] Our Supreme Court has held that an individual municipal employee may be found liable for negligent infliction of emotional distress only when it arises out of conduct occurring in the termination of employment. *Perodeau* v. *Hartford*, 259 Conn. 729, 762–63, 792 A.2d 752 (2002).

ance procedure, a plaintiff is not required to exhaust statutory or contractual administrative remedies." That is an inaccurate statement of Connecticut law.

In *Mendillo*, the plaintiff raised an intentional infliction of emotional distress claim. *Mendillo* v. *Board of Education*, supra, 246 Conn. 461. Noting that a "complaint sounding in tort will not in itself prevent [resort to contractual grievance procedures] if the underlying contract embraces the disputed matter"; (internal quotation marks omitted) id., 475; our Supreme Court explained that whether a dispute is grievable under a collective bargaining agreement depends on the proper interpretation of the agreement. Id., 476. Because the alleged tortious conduct did not fall within the definition of grievance as provided in the collective bargaining agreement, the court in *Mendillo* held that the plaintiff's claim was not subject to the agreement's grievance procedures. Id.

In determining whether a tort claim is subject to the grievance procedures of a collective bargaining agreement, the critical inquiry, therefore, is whether the tortious conduct is encompassed by the terms of the agreement. In the present case, the plaintiff predicates his claim of negligent infliction of emotional distress on a hostile work environment. Article III, § 3.2 (a), of the agreement defines grievance as "a violation of a specific term or terms of this Agreement or a problem incident to job descriptions, classifications, duties, and working conditions to the detriment of an employee or group of employees." That a hostile work environment is a problem incident to working conditions cannot be debated. We accordingly conclude that the plaintiff's claim was subject to the grievance procedure set forth in the agreement. Because he failed to exhaust the available grievance procedure, his claim must fail.

The judgment is reversed and the case is remanded with direction to render judgment dismissing the action.

In this opinion the other judges concurred.