DECISION ON APPEAL
MANFREDI, J.
HISTORY OF CASE:
This appeal arises out of the dismissal oí the Plaintiffs Amended Complaint by the Gaming Disputes Trial Court. The Plaintiff David Bartha is a member of The Mohegan Tribe, and the Plaintiff First American Mechanical, Inc. is a Certified Mohegan Entity as defined in The Mohegan Tribal Employment Rights Ordinance. MTO 2002-02.[1] (hereafter “TERO”). The original complaint was brought in five counts. Count One alleged a violation of TERO; Count 'Two alleged violations of Connecticut General Statutes § 42-110a et seq. (Unfair Trade Practices Act) and a breach of an implied covenant of good faith *482 and fair dealing; Count Three alleged a violation of due process and equal protection; Count Four alleged an intentional interference with contractual relations; and Count Five alleged intentional infliction of emotional distress. All of the alleged violations or causes of. action arose out of the awarding of a ten year contract to Johnson Controls, (a non Native American entity which is not entitled to any preferences under the TERO) to maintain actuators on a mechanical system which was originally installed by the Plaintiff, First American Mechanical, Inc. The crux of the complaint was that the individual Plaintiff is a Native American entitled to a preference for the awarding of such contracts under TERO and that the Plaintiff Corporation is a business wholly owned by a Native American.
Plaintiffs further allege that they did not pursue a complaint through the Mohegan Tribal Employment Rights Commission as required by TERO because they had been informed that a complaint would be a “waist (sic) of time.”
A Request to Revise was filed by the Defendant and an Amended Complaint was filed by the Plaintiff on October 22, 2003. The Amended Complaint contained seven counts, again alleging violations of TERO in Count One; unfair and deceptive trade practices in Count Two; breach of an implied covenant of good faith and fair dealing in Count Three; a violation of due process and equal protection in Count Four; violation of equal protection in Count Five; an intentional interference with contractual relations in Count Six; and intentional infliction of emotional distress in Count Seven.
Thereafter, the Defendants filed a Motion to Dismiss the first Amended Complaint which the Trial Court, Eagan, J., after hearing, granted on grounds of failure to exhaust administrative remedies and sovereign immunity.
STANDARD OF REVIEW:
As a preliminary matter, we set forth the applicable standard of review. The standard review of a motion to dismiss is ... well established. In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader.... A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction.... Because the exhaustion [of administrative remedies] doctrine implicates subject matter jurisdiction, [the court] must decide as a threshold matter whether the doctrine requires dismissal of the [Plaintiffs] claim.... Because [a] determination regarding a trial court’s subject matter jurisdiction is a question of law, our review is plenary. (Internal quotation marks omitted.)
Brookridge District Assn. v. Planning and Zoning Commission, 259 Conn. 607, 610-11, 793 A.2d 215 (2002); see also Neiman v. Yale University, 270 Conn. 244, 851 A.2d 1165 (2004).
Before proceeding further with the discussion of this case, the Court notes that neither the Mohegan Tribal Employment Rights Commission (hereafter referred to as the “Commission”), which is the Tribal entity in charge of the enforcement of TERO, nor Johnson Controls, the entity which was awarded the contract in dispute and which allegedly colluded with officials of The Mohegan Tribal Gaming Authority, were named as Defendants by the Plaintiffs in this case.

*483
DISCUSSION

COUNT ONE

That matter aside, in connection with the first count of the Plaintiffs Amended Complaint the Plaintiffs claim that the failure of the Defendants to post competitive bids for the maintenance contracts on the HVAC and other equipment was a violation of TERO and prevented the Plaintiff, First American Mechanical, Inc., from bidding on the maintenance contracts, thus suffering economic loss as a result. As noted by the Trial Court, the version of TERO in effect at the time of Plaintiffs complaint was MTO 2002-02 which has been repealed by and replaced with MTO 2004-01. Section XIX of MTO 2002-02 provides:
Except as expressly provided herein, nothing in this ordinance is to be construed as a waiver of the Tribe’s sovereign immunity from uncontested lawsuit, nor as consent by the Tribe to bring an action against the Tribe, its officers, its representatives, or any of its departments or entities.”
Section XIV (B), titled “Exhaustion of Administrative Remedies” is quite specific:
Prior to seeking any relief from the Tribal Court, any person aggrieved by any action taken by a covered employer or the department shall first seek administrative relief pursuant to the specific procedures prescribed and set forth in Section XII of this Ordinance.
Section XII sets forth a detailed procedure for the filing of a complaint with the Commission and the procedures for investigation and hearing, of such complaints. The Ordinance further provides rights of appeal to the Tribal Court, but only from a decision or order of the Commission. MTO 2002-04 Section XIV (A). In the instant case, the Plaintiffs never having pursued the issue before the Commission, there was no decision or order from which an appeal could be taken.
As noted by the Trial Court in its decision:
The doctrine of exhaustion of administrative remedies has been expressly recognized by the Mohegan Gaming Disputes Court, Jones v. Mohegan Tribal Gaming Authority, 1 G.D.R. 15, 17 [1 Am. Tribal Law 400, 403-04] (1998); Pirolli v. Mohegan Tribal Gaming Authority, 1 G.D.R. 25 [1 Am. Tribal Law 411] (1998); See generally, Long v. Mohegan Tribal Gaming Authority, supra, and in Connecticut Jurisprudence which has been adopted as Mohegan Tribal Law. Accordingly, Plaintiffs’ various arguments seeking to establish a waiver of sovereign immunity necessarily must fail unless they have exhausted their administrative remedies under Section XIV (B) of MTO 2002-02.
We affirm the Trial Court’s decision to dismiss Count One of Plaintiffs’ Amended Complaint for their failure to exhaust their administrative remedies under TERO. In construing the complaint in the most favorable light to the Plaintiffs, there are simply no allegations which rise to the level of an exception to the doctrine of an exhaustion of an administrative remedy. The only allegation is that it would be a “waist [sic] of time.” This simply does not rise to the futility standard required under Mohegan or Connecticut law. In the recent Connecticut case of Sobczak v. Board of Education, 88 Conn.App. 99, 868 A.2d 112 (2005), the Connecticut Supreme Court described the limits to the futility exception to the exhaustion doctrine:
“The mere possibility, or even likelihood of an adverse decision does not render a remedy futile.” Neiman v, Yale University, supra, 270 Conn. [at] 260 [851 A.2d 1165]. “It is futile to seek a remedy only when such action *484 could not result in a favorable decision and invariably would result in further judicial proceedings.”
88 Conn.App. at 108, 868 A.2d 112.
Furthermore, in Sobczak, the Plaintiff employee had failed to file a grievance in accordance with his employment contract before seeking court intervention in the dispute at issue. The court stated that:
“The agreement mandated that “[E]m-ployees shall utilize this grievance procedure before seeking other legal or administrative remedies to resolve their grievances.”
By not complying with that requirement, the Plaintiff in Sobczak failed to exhaust the available grievance procedure. That failure deprived the Court of subject matter jurisdiction. Likewise here, by their failure to utilize the procedures under TERO the Plaintiffs failed to exhaust their administrative remedies, thus depriving the Trial Court of jurisdiction.[2]

COUNT TWO

Count Two of the Plaintiffs’ Complaint alleges that the Defendants are liable to the Plaintiffs pursuant to the Connecticut Unfair Trade Practices Act Connecticut General Statutes Section 42-110(g) et seq. (OUTPA).[3]
The trial court correctly concluded that “there would need to be a specific waiver of sovereign immunity as to CUT-PA in order for this court to have jurisdiction.” As pointed out by Chief Judge Guernsey in Long v. Mohegan Tribal Gaming Authority, et al, 1 G.D.R. 5,1 Am. Tribal Law 385 (1997):
“Absent “a clear waiver [of immunity] by the tribe” ... it is clear that Indian Tribes possess the “common law immunity from suit traditionally enjoyed by sovereign powers.”... the sovereignty of the Mohegan Tribe of Indians of Connecticut is further expressly set forth in the Mohegan Constitution, which provides that the Tribe shall have all the inherent sovereign rights and powers of an independent, indigenous sovereign nation. Mohegan Constitution, Article 2. While Indian Tribes can waive their sovereign immunity, “such waiver may not be implied, but must be expressed unequivocally.” ... the issue of Tribal sovereign immunity is jurisdictional in nature.” (Citations omitted)
It is clear to this Court that there has been no “unequivocal” waiver of sovereign immunity in connection with OUTPA claims brought against the Tribe. The limited waiver of sovereign immunity contained in the Mohegan Torts Ordinance, MTO 2001-07[4] does not incorporate claims pursuant to Conn. Gen.Stat. Sec. 42-110a et seq., and further specifically excludes any breach of duty imposed by contract.[5]
*485 In the past, this Court has refused to find an implied waiver of sovei*eign immunity based on Connecticut law, holding that the sovereign immunity of the Mohegan Tribe is preserved rather than abrogated by the provisions of MTO 95-4. MacLean v. Office of the Director of Regulation, 1 G.D.A.P. 20, 22, 5 Am. Tribal Law 273, 270-77 (2004).

COUNT THREE

This Court adopts the rational of the Trial Court in connection with Count Three alleging breach of an implied covenant of good faith and fair dealing, and affirms the dismissal of Count Three.[6]

COL NTS FOUR AND FIVE

Counts Four and Five of the Amended Complaint each make claims for damages for violations of rights protected under the Indian Civil Rights Act (ICRA) 25 CSC Section 1302(8). As noted in Donna Warthen v. Mohegan Tribal Gaming Authority, Et Al, in a memorandum of decision on a motion to strike dated February 14, 2002, Chief Judge Guernsey stated:
The adoption of the provisions of the Indian Civil Rights Act by the Mohegan Tribe in its constitution does not create a waiver of sovereign immunity against a claim for damages. (“[T]he fact that a statute applies to Indian Tribes does not mean that Congress abrogated Tribal immunity in adopting it.”)
Inasmuch as these claims are barred by a doctrine of sovereign immunity, there is no need for this Court to reach the issue of exhaustion of administrative remedies in connection with these counts.[7]

COUNT SIX

Count Six re-alleges paragraphs 1-49 of the Complaint and claims damages for an intentional interference with the “competitive bidding process required by TERO.” This Court reads the gravamen of Count Six to be a violation of TERO. The Court’s analysis of TERO claims under Count One therefore apply to Count Six, and Count Six is dismissed for those reasons. The Trial Court also expressed serious reservations as to whether or not the allegations Count Six adequately pleaded a claim for tortuous interference with contractual relations. Our review concludes that it did not. In order for such a claim to exist there must be more to a business relationship than a right to bid. Where a right to reject a bid exists, “there is nothing to show that the contract would have been secured in the absence of interference.” 45 Am.Jur. 2d, Interference, Sec. 12. We also note that the contracting authority in this case is actually the Defendant MTGA and that logically one cannot interfere with one’s own contracts, other than to breach an existing contract.[8] Here, no breach is alleged as no contract was yet in existence.

COUNT SEVEN

Count Seven again re-alleges paragraphs 1-49, and claims damages for in *486 tentional infliction of emotional distress. The Trial Court, noting the distinction between the Mohegan Torts Code, MTO 2001-07[9], and its predecessor, MTO 98-1, held that the waiver of sovereign immunity in MTO 2001-07 does not include a waiver of sovereign immunity for the intentional infliction of emotional distress.
It has been established that, under the provisions of MTO 98-1, an individual employee could be held liable for damages “if it is established that their conduct exceeded the scope of their employment or authority”. MTO 98-1 Sec. 6; Bethel v. Mohegan Tribal Gaming Authority, Et Al, 1 G.D.A.P. 1, 5, 2 Am. Tribal Law 373, 380-81 (2000). This provision was eliminated from MTO 2001-05, which defines “Intentional Tort”[10] but does not mention it again. Furthermore, the Trial Court correctly pointed out that Paragraph 18 of the First Amended Complaint alleges that First American Mechanical is an employee of the MTGA (as defined in M.T.O. 2001-07) and that David Bartha is its agent. Pursuant to Section 4 E of M.T.O. 2001-07 employees are barred from bringing tort claims against the MTGA arising out of their employment, or “from any aspect of their employment relationship”. MTO 2001-07 Section 4(E).
Count Seven also alleges that the conduct alleged throughout the body of the complaint amounts to an intentional infliction of emotional distress, and concludes that the conduct of the Defendants was “extreme, outrageous, and illegal.”
Reviewing the allegations of Count Seven in a light most favorable to the Plaintiffs, this Court concludes that the count does not state an action cognizable under Connecticut law and therefore, the law of this jurisdiction for an intentional infliction of emotional distress.
“Liability [for intentional infliction of emotional distress] has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.” Caroll [Carrol] v. Allstate Insurance Company, 262 Conn. 433, 443, 815 A.2d 119 (2003).
This Court concludes that the allegations of the complaint simply fail to rise to the level required for a claim of intentional infliction of emotional distress.
Moreover, this Court is of the opinion that even if the allegations of Count Seven properly set forth claims for intentional infliction of emotional distress, that this court would be without jurisdiction to hear such a claim for the reason set forth under the analysis of Count One.
CONCLUSION
The decision of the Trial Court is affirmed for the reasons stated herein and the Plaintiffs’ Complaint is dismissed. The Mohegan Torts Ordinance does not create rights of action for violations of TERO and the Gaming Disputes Court is not the proper forum for resolution of rights set out in the Ordinance, nor is it empowered to hear TERO claims de novo. Where, as here, claimants are allegedly aggrieved by a violation of some provision of rights created under TERO, those claims must be brought to the Compliance Officer/Director and the Mohegan Tribal *487 Employment Rights Commission for resolution in accordance with its mandate and procedures.

. MTO 200-04 has been repealed by MTO 2004-01 January 14, 2004.

. A very different issue would have been presented had the Plaintiffs sought a writ of mandamus to compel the Compliance Officer/Director to proceed to prosecute Plaintiffs' complaint under MTO 2002-04 Section XII. We note that TERO is apparently silent as to rights of appeal, if any, from the failure of the Compliance Officer/Director to find probable cause on a complaint filed under Section XII or what authority, if any, a Tribal Court (Gaming Disputes Court or Mohegan Tribal Court) has in such a situation.

. As previously noted, Johnson Controls, which allegedly engaged in a sham bid process and allegedly improperly influenced MTGA officials in their awarding of the maintenance contract, was not made a party to this action.

. For Claims accruing on or after June 22, 2005, this Ordinance has been replaced by MTO 2005-02.

. “Tort” is defined as "... an injury to a person caused by a breach of a legal duty to that person, but does not include a breach of a duty imposed by contract.” MTO 2001-07 Section 5(20).

. See footnote 5, supra.

. The failure of the Plaintiffs to include as Defendants the Mohegan Tribal Employment Rights Commission or the Compliance Officer/Director would prevent the Court from even considering any type of enforcement action, such as mandamus, not tied to a claim for damages. In any event, it is not at all clear that either Tribal Court has any such authority over The Mohegan Tribal Employment Rights Commission or the Compliance Officer/Director. See fn. 2, supra.

. ”[I]t is well-settled that the tort of interference with contractual relations only lies when a third party adversely affects the contractual relations of two other parties.” (emphasis in original). Wellington Systems, Inc. et al. v. Redding Group, Inc., et al., 49 Conn.App. 152, 168, 714 A.2d 21 (1998).

. MTO 2001-07 has since been repealed and replaced by MTO 2005-02 for claims accruing on or after June 22, 2005.

. “Intentional Tort" is defined as “a tort wherein the breach of legal duty is by one who desired to cause (he consequence of his act., or by one who knew or reasonable should have known that the consequences were substantially certain to result from the act" MTO 2001-07 Section 7(21),