MEMORANDUM OF DECISION OF DEFENDANT’S MOTION TO DISMISS (Pleading No. 103)
GUERNSEY, C.J.
Plaintiff’s action against the Mohegan Tribal Gaming Authority arises out of the same lease between it and the Defendant that is tangentially involved in the Mohegan Tribe’s pending action to collect sales taxes allegedly due and owing for sales occurring during Plaintiffs occupancy of the leased premises.[1] Based on the Defendant’s alleged wrongful entry and confiscation of Plaintiffs equipment, Plaintiff
*291 claims damages[2] on four legal theories: violation of the Mohegan Constitution’s Article XI (Counts One and Two), breach of contract/lockout (Count Three), and bad faith (Count Four). The Defendant has moved to dismiss all but Count Three on grounds of sovereign immunity (Count Three is conceded to be properly pleaded, although the allegations are denied).
I
FACTUAL BACKGROUND
Plaintiff operated a restaurant at the Mohegan Sun Casino, commencing approximately March 30, 2001, under a lease with the Defendant dated on said date, which has not been introduced into evidence (although a portion thereof was quoted by both counsel during argument).[3] Based on the same actions of the Defendant in allegedly entering and locking out the Plaintiff from the leased premises on or about October 31, 2012, the Plaintiff commenced an action in the Superior Court on grounds of lockout, and seeking injunctive relief. At issue before Judge Lee Cole-Chu in that case was whether the waiver of sovereign immunity in the lease, which permitted a “suit by Tenant in any court of competent jurisdiction for any claims by Tenant for the purpose of enforcing this Lease and any judgment arising out of this Lease” was sufficient to allow suit in the Superior Court.[4] Judge Cole-Chu, noting that it is settled law that any such waiver must be expressed unequivocally and that the Connecticut Supreme Court has recognized that Mohegan law by which the Lease would be governed[5], “provides a forum[6]— albeit not the plaintiffs preferred forum— for the plaintiffs claims in contract and in equity against the defendant” accordingly granted Defendant’s motion to dismiss. Big Bubba’s BBQ, LLC v. Mohegan Tribal Gaming Authority, 56 Conn. L. Rptr. 123, 2013 WL 2501971 (May 23, 2013).
II
ANALYSIS
Counts One and Two seek damages based on alleged violations of Article XI of the Mohegan Constitution. Article XI, “Individual Rights of Tribal Members”, which in relevant part provides as follows:
Section 1. [Restrictions on LawMaking.]
The Mohegan Tribe, in exercising its powers of self-government, shall make no law inconsistent with The Indian Civil *292 Rights Act of 1968 (25 USC 1301-1303; 82 Stat. 77), which requires that The Tribe not:
(e) take any private property for a public use without just compensation;
(h) deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without the process of law;
As the Defendant pointed out in its Memorandum of Law, it is well settled that the Mohegan Tribe and the Mohegan Tribal Gaming Authority, absent a clear and unequivocal waiver by the Tribe or abrogation by Congress, possess the common law immunity from suit traditionally enjoyed by sovereign powers. Worthen v. Mohegan Tribal Gaming Authority, Et Al., 1 G.D.R. 90, 93-94, 3 Am. Tribal Law 467 (2003), As for damage claims arising from the Indian Civil Rights Act (ICRA), it was made clear by the Supreme Court in Santa Clara Pueblo v. Martinez, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978), that ICRA did not limit the Tribe’s immunity from suit. Abundant case law in this jurisdiction establishes that there has been no waiver under ICRA of the sovereign immunity of the Mohegan Tribe for claims for monetary damages against the Tribe or Tribal entities. Bartha v. Mohegan Tribal Gaming Authority, 1 G.D.A.P. 34, 6 Am. Tribal Law 480 (2005).
Against what would seem to be the absolute bar to its claims for monetary damages, raised by Santa Clara Pueblo and numerous cases in the Gaming Disputes Court for alleged ICRA violations, the Plaintiff has advanced three arguments. First, Plaintiff claims that the Mohegan Constitution itself allows such claims, citing Article XIII, Section 4:
Section 4, Indian Civil Rights Act.
Nothing in this Article XIII or any other provisions of this Constitution, or any other provision of tribal law shall foreclose or limit any right any person may otherwise have to bring an action in a court of competent jurisdiction to protect a right or seek a remedy otherwise available pursuant to the Indian Civil Rights Act, 25 USC 1301 et seq.
Even a cursory reading of this portion of Article XIII could not confuse it with a “clear and unequivocal waiver” required for a finding that sovereign immunity has been waived. Long v. Mohegan Tribal Gaming Authority, 1 G.D.R. 5, 11, 1 Am. Tribal Law 385 (1997). The expressed intent of Section 4 is to clarify (probably unnecessarily) that the Tribal Gaming Amendment does not prohibit actions otherwise available under the Indian Civil Rights Act.[7]
Plaintiffs second argument attempting to avoid the clear non-abrogation by ICRA of sovereign immunity established by Santa Clara Pueblo and other cases in this and other courts, is that the inclusion in the Mohegan Constitution of language taken from the Indian Civil Rights Act in Article XI ipso facto waives sovereign immunity and renders Santa Clara Pueblo inapplicable. Plaintiffs third argument is that the limited waiver of sovereign immunity in Section 23.15 of the lease between the parties is sufficiently broad to encompass ICRA claims for damages. Neither is persuasive.
Addressing first Article XI, it should be noted that there is no authority cited by the Plaintiff for the proposition that this Article of the Mohegan Constitu *293 tion was intended to do anything other than what it states: to prohibit the Mohegan Tribe from making any law inconsistent with the Indian Civil Rights Act.[8] The intent to incorporate ICRA as it presently existed and as it may be amended in the future could not be more plainly expressed than in Article XI, Section 2:
Section 2. [Status of Future Amendments to Indian Civil Rights Act of 1968.]
In the event that the Indian Civil Rights Act of 1968 is amended in the future, The Tribal Council may, through legislative action, provide that said amendment shall be deemed a part of this Constitution without the need to adopt formal amendments to this Constitution.
This is the only provision in the Mohegan Constitution that provides for the amending of the Constitution without an election. See Article XVII. “Enforcement [of ICRA claims] depends on tribal waivers of sovereign immunity in tribal court for purposes of these claims/' COHEN’S HANDBOOK OF FEDERAL INDIAN LAW, 2012 Ed., § 14.04[2], fn.44. There is no waiver, in the Constitution or elsewhere, to which the Plaintiff can direct the Court other than the waiver set forth in Section 23.15 of its lease with the Defendant that forms the basis of Plaintiffs third argument.
Addressing Plaintiffs claims that Section 23.15 of the lease provides a waiver of sovereign immunity for monetary damage claims for ICRA violations requires consideration of the entire text of the waiver:
Landlord expressly waives its immunity from unconsented suit for the purpose of *294 permitting a suit by Tenant in any court of competent jurisdiction for any claims by Tenant for the purpose of enforcing this Lease and any judgment arising out of this Lease, Landlord’s waiver of immunity from suit is specifically limited to the following actions and judicial remedies: (a) the enforcement of Landlord’s obligations under this Lease with an award of actual damages in connection with any breach of the provisions hereof provided, however, that the court shall have no authority or jurisdiction to order execution against any assets or revenues of Landlord except cash of Landlord (other than cash which Landlord can demonstrate was derived from a source other than the Retail Facilities); and (b) an action to prohibit Landlord from taking an action that would prevent the operation of the Lease pursuant to its terns, or that requires Landlord to specifically perform any obligation under this Lease. In no instance shall any enforcement of any kind whatsoever be allowed against any assets of Landlord other than the limited assets of Landlord specified in the foregoing clause (a).
By its terms, this applies solely to “any claims by Tenant for the purpose of enforcing this Lease and any judgment arising out of this Lease.” It provides for “actual damages” as well as injunctive relief in a civil action against the Landlord, which Plaintiff has properly pleaded in Count Three.
Waivers of sovereign immunity are to be strictly construed and “cannot be implied but must be unequivocally expressed.” La Plante v. Mohegan Tribal Gaming Authority, 3 G.D.R. 17, 19, 6 Am. Tribal Law 592 (2006), quoting Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). This particular waiver, by its express terms, applies to claims “for the purpose of enforcing this Lease and any judgment arising out of this Lease” and is limited to enforcement of Landlord’s obligations by means of an award of “actual damages” (enforceable against cash assets of Landlord arising from the Retail Facilities) or injunctive relief. There is no mention anywhere of allowing monetary damage awards for alleged constitutional violations—only damage awards to enforce Landlord’s obligations. The limited waiver of sovereign immunity in Section 23.15 cannot be read so as to permit awards of monetary damages for alleged constitutional violations, only for contractual ones.
One additional argument, belatedly advanced, for allowing the Constitutional claims set forth in Counts One and Two, is that the Gaming Disputes Court has the authority to enforce the provisions of Article XI by means of injunctive relief. Although it has long been held that the Gaming Disputes Court is an appropriate forum for such claims, in this case they are clearly an afterthought, having been neither pleaded[9] nor briefed. Although resting on the same set of operative facts, this Court will not consider claims not pleaded. Willow Springs Condominium Association, Inc. v. Seventh BRT Development Carp., 245 Conn. 1, 63, 717 A.2d 77 (1998). Therefore, the Court need not address the complexities of affording procedural due process protection entitlement in a straightforward breach of contract claim where the same has been neither pleaded [10] nor briefed, especially in light of the *295 inability of Plaintiff to articulate any meaningful difference in rights available to Plaintiff if it is limited to a breach of contract action pursuant to Section 23.15 (including the right of injunctive relief as well as damages), available to it without resort to due process claims.[11]
Count Four, sounding in “Bad Faith,” has been challenged by the Defendant as the presumed basis for the claim of punitive damages set forth in paragraph 4 of Plaintiffs Prayer for Relief, but also as not supported by Section 23.15’s limited waiver of sovereign immunity.
The elements of a claim of bad faith have been described as follows by the Connecticut Supreme Court:
We begin by setting forth the required elements for bad faith claims. “[I]t is axiomatic that the ... duty of good faith and fair dealing is a covenant implied into a contract or a contractual relationship. ... In other words, every contract carries an implied duty requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement.... The covenant of good faith and fair dealing presupposes that the terms and purpose of the contract are agreed upon by the parties and that what is in dispute is a party’s discretionary application or interpretation of a contract term.... ”
“To constitute a breach of [the implied covenant of good faith and fair dealing], the acts by which a defendant allegedly impedes the plaintiffs right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith.... Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one’s rights or duties, but by some interested or sinister motive.... Bad faith means more than mere negligence; it involves a dishonest purpose.” (Citations omitted; internal quotation marks omitted.) De La Concha of Hartford, Inc. v. Aetna Life Ins. Co., 269 Conn. 424, 482-33, 849 A.2d 382 (2004).
Capstone Bldg. Carp. v. American Motorists Ins. Co., 308 Conn. 760, 794-96, 67 A.3d 961 (2013). In Count Four (as in the other counts), the Plaintiff alleges, inter alia, the wrongful confiscation of its property and the lockout from premises leased from the Defendant.
The Defendant correctly asserts, and the Plaintiff does not rule out, that by its terms, the Section 23.15 waiver of sovereign immunity for “actual damages” does not allow for punitive damages, a position with which this Court agrees. If this action were brought pursuant to the Mohegan Torts Code, the prohibition would be explicit. MTC § 3-251(l).[12] As it stands, it is doubtful that this Court *296 even has the authority to award punitive damages against ‘the Mohegan Tribe or Tribal Gaming Authority under the prohibition against awarding “costs, expenses, or attorney’s fees of the opposing party” contained in the Ordinance establishing the Gaming Disputes Court. MTC § 3-132(a)(2).[13]
Nevertheless, although the Court is inclined to agree with the Defendant that the claims (other than for punitive damages) under Count Four could be, and to some extent are, asserted under Count Three, a fair reading of the allegations reveals that, for the most part, they are grounded in the claimed breaches of contract that are arguably within the Section 23.15 limited waiver of sovereign immunity with the exception of the associated claim for punitive damages, which claim may be dismissed.
Defendant’s Motion to Dismiss Counts One and Two is granted; as to Count Four, Defendant’s Motion to Dismiss is denied, except as to Paragraph 4 of the Prayer for Relief which is dismissed.[14]

. The Mohegan Tribe v. Big Bubba’s BBQ, LLC, GDTC-CV-13--103-PMG.

. The issue of injunctive relief will be dealt with in further detail, but it should be noted that, other than the boilerplate claim for ‘‘[s]uch further legal and equitable relief that the Court may deem just and proper," the argument that a claim for injunctive relief avoids the sovereign immunity of the Tribe appears nowhere in Plaintiffs complaint or Memorandum of Law in Opposition to Defendant’s Motion to Dismiss, and seems to have surfaced as a result of this Court’s inquiry of Defense counsel as to whether the same, if properly pleaded, would survive a motion to dismiss.

. Inasmuch as most (but not all) of the pages of this document are attached to pleadings in Docket No. CV-13-103-PMG, the Court will take judicial notice of the complete limited waiver of sovereign immunity contained therein, only a portion of which was quoted in Plaintiff's Memorandum. The entire waiver (Section 23.15) is also set forth in Judge Cole-Chu’s decision of May 23, 2013. No one (neither this Court nor Judge Cole-Chu) seems to have the complete document.

. Given that the lease was executed on March 30, 2001, the restrictive provisions set forth in MTC § 1-6 as to the wording of a contractual waiver of sovereign immunity, adopted by Res. No. 2009-06, are inapplicable.

. Lease, Section 23.18.

. See Kizis v. Morse Diesel International, Inc., Et Al., 260 Conn. 46, 794 A.2d 498 (2002).

. This is probably unnecessary in that Santa Clara Pueblo "interpreted ICRA to limit federal court enforcement to habeas corpus jurisdiction over claims by persons in tribal custody." COHEN'S HANDBOOK OF FEDERAL INDIAN LAW, 2012 Ed., § 14.04[2], Santa Clara Pueblo v. Martinez, 436 U.S. 49, 56-57, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978).

.Relevant provisions of the Indian Civil Rights Act are as follows:
§ 1302. Constitutional Rights: No Indian tribe in exercising powers of self-government shall:
(a) In general
No Indian tribe in exercising powers of self-government shall—
1. make or enforce any law prohibiting the free exercise of religion, or abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble and to petition for a redress of grievances;
2. violate the right of the people to be secure in their persons, houses, papers, and effects against unreasonable search and seizures, nor issue warrants, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or thing to be seized;
3. subject any person for the same offense to be twice put in jeopardy;
4. compel any person in any criminal case to be a witness against himself;
5. take any property for a public use without just compensation;
6. deny to any person in a criminal proceeding the right to a speedy and public trial, to be informed of the nature and cause of the accusation, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and at his own expense to have the assistance of counsel for his defense;
7, (A) require excessive bail, impose excessive fines, or inflict cruel and unusual punishments;
(B) except as provided in subparagraph
(C), impose for conviction of any 1 offense any penalty or punishment greater than imprisonment for a term of 1 year or a fine of $5,000, or both;
(C) subject to subsection (b), impose for conviction of any 1 offense any penalty or punishment greater than imprisonment for a term of 3 years or a fine of $15,000, or both; or
(D) impose on a person in a criminal proceeding a total penalty or punishment greater than imprisonment for a term of 9 years;
8, deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law;
9, pass any bill of attainder or ex post facto law; or
10, deny to any person accused of an offense punishable by imprisonment the right, upon request, to a trial by jury of not less than six persons.

. The boilerplate prayer for relief “[sjuch further legal and equitable relief that the Court may deem just and proper” is woefully inadequate to alert the Court, and opposing counsel, as to what injunctive relief was being sought..

. Conn. Prac. Bk. § 10-27 provides as follows:
*295 A party seeking equitable relief shall specifically demand it as such, unless the nature of the demand itself indicates that the relief sought is equitable relief.

. ''Nevertheless, the doctrinal implications of constitutionalizing all public contract rights would raise substantial concerns, and we seriously doubt that Roth and its progeny portend such a result, although we do not reach the issue today. An interest in enforcement of an ordinary commercial contract with a state is qualitatively different from the interests the Supreme Court has thus far viewed as "property” entitled to procedural due process protection.” S & D Maintenance Co., Inc. v. Goldin, 844 F.2d 962, 966-67 (2d Cir.1988); See also, e.g., Columbia Air Services, Inc. v. Department of Transportation, Et Al., 293 Conn. 342, 977 A.2d 636 (2009).

. The Torts Code, as noted by the Defendant, specifically rules out from its waiver of sovereign immunity a breach of a duty imposed by contract MTC § 3-245.

. Under Connecticut law, punitive damages are generally limited to the costs of suit, including attorney’s fees. The Connecticut Supreme Court has declined to review this common law limitation, at least in the absence of a statutory imposition of punitive damages:
In Waterbury Petroleum Products, Inc. v. Canaan Oil & Fuel Co., supra, we declined a similar invitation to stray from our well settled rule regarding the measurement of punitive damages. We affirmed the continuing viability of a long line of cases holding that common law punitive damages serve primarily to Compensate the plaintiff for his injuries and, thus, are properly limited to the plaintiffs litigation expenses less taxable costs. See, e.g., Alaimo v. Royer, 188 Conn. 36, 42, 448 A.2d 207 (1982); Vandersluis v. Weil, 176 Conn. 353, 358, 407 A.2d 982 (1978); Collens v. New Canaan Water Co., 155 Conn. 477, 488, 234 A.2d 825 (1967); Triangle Sheet Metal Works, Inc. v. Silver, 154 Conn, 116, 127, 222 A.2d 220 (1966).
Berry v. Loiseau, 223 Conn. 786, 827, 614 A.2d 414 (1992).

. The Court is aware that the legal sufficiency of prayers for relief is generally addressed by means of a motion to strike; however, given that the basis for challenging the claim for punitive damages is based on sovereign immunity and is therefore jurisdictional, the same is dealt with in this ruling.